# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## SCOTT AND ALS. V. HILLENBERG AND ALS.

### August 16th, 1888.

1. LEGITIMACY—*Presumption.*—The law presumes legitimacy where husband recognizes the child as his, and impossibility of procreation is not established. Such presumption is not repelled by proof of circumstances, which only create doubts and suspicion; but the evidence of non-access of husband must be clear and positive. *Smith* v. *Perry*, 80 Va. 563; 60 Am. Dec. 650.

2. CONVEYANCE IN CONSIDERATION OF SUPPORT—*Subrogation—Case at bar.*—Father conveys half his land to his son, A., and half to his son, E., on condition that each should share equally in expense of supporting him during his life, and retained a lien therefor in each deed. Up to his death, in June, 1884, A. contributed half of the said expense. After that, until father's death, in April, 1885, E. furnished the entire support.

HELD:

> The expense of the support during the period from June, 1884, to April, 1885, should be charged on A.'s parcel of the land in behalf of E.

Appeal from decree of circuit court of Wythe county, entered March 9th, 1887, in the causes of Daniel Hillenberg against D. H. P. Scott and als., and of D. H. P. Scott and als. against Adam Hillenberg, heard together. Scott appealed. Opinion states the case.

*Robert Crockett*, for the appellants.

*James A. Walker*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The chief error assigned is the decision of the circuit court that Margaret Scott, the wife of the appellant, D. H. P. Scott, and the daughter of Elizabeth Hillenberg, is not the legitimate child of one Austin Hillenberg, although born in lawful wedlock, and is incapable of taking as an heir of Austin Hillenberg, and therefore denying the partition of the land of Austin Hillenberg between the said Margaret Scott and her brother, Adam Hillenberg, prayed for in the bill of D. H. P. Scott and wife for that purpose.

Austin Hillenberg and Elizabeth Kinser were married either in the year 1857 or 1858, and several children were the fruit of this marriage, all of whom (including the wife of appellant) have died, except the appellee, Adam Hillenberg. It was contended by the appellees, in the court below, that Austin Hillenberg was a soldier in the Confederate army, and that he was not at his home in the year 1864, and that during that year his wife did not visit him; that his wife became pregnant during the summer or fall of 1864, and, on the 15th of May, 1865, she gave birth to Margaret, the wife of appellant, D. H. P. Scott, and that it was, therefore, impossible for Austin Hillenberg to have been the father of the said Margaret. The question for this court to decide, upon a review of the facts presented by the record of this case, is, was Margaret E. Hillenberg, the wife of appellant, D. H. P. Scott, an adulterine bastard ?

The record shows, and it is not questioned, that she was born, May 15th, 1865, of Elizabeth Hillenberg, then lawful wife of Austin Hillenberg. The presumption of law is that she was legitimate. *Smith* v. *Perry, Adm'r*, 80 Va. (Hansbrough) 569 ; 2 Best on Evidence, sections 314 and 349 ; 2 Greenleaf on Evidence, sec. 150; *Dennison* v. *Page*, 72 Amer. Dec. 649 ; *Wright* v. *Hicks* (15 Georgia, 100), 60 Amer. Dec. 687 ; *Stegall* v. *Stegall's Adm'r*, 2 Brockenbrough Reports, 257.

The presumption of legitimacy is not rebutted by proof of circumstances, which only create doubt and suspicion. "To repel the presumption of legitimacy in any case, the evidence must be

clear and positive." 60 Amer. Dec. 638. "Throughout the investigation the presumption in favor of legitimacy is to have its weight and influence, and the evidence against it ought to be strong, distinct, satisfactory and conclusive." 2 Greenleaf on Ev., note 2 to sec. 150; *Hargrave* v. *Hargrave,* 9 Beavan, 52.

"Non-access of the husband to the wife must be proved beyond all reasonable doubt." 72 Amer. Dec. 650.

"The duty of the jury is to weigh the evidence against the presumption (of legitimacy) and to decide according to the preponderance." 60 Amer. Dec. 687.

The defendant in error contended in the court below that, as the child, Margaret Hillenberg, was born on 15th of May, 1865, she must, by the law of procreation and gestation, have been begotten in the month of August, 1864; and they introduced much evidence tending to prove that Austin Hillenberg was not at his home and did not see his wife during the year 1864. Several soldiers, who served in the same company with Austin Hillenberg, were introduced to prove that Austin Hillenberg was not at home during the summer or fall of 1864. Of these, N. T. Vaught, who was a lieutenant and sometimes in command of the company of which Austin Hillenberg was a member, in answer to the question, "Was Austin Hillenberg with your company and regiment in the years 1863 and 1864, and if so, state when he was with it and when absent?" stated, "He was with it in 1863 and 1864. In the fall of 1863 we were sent to Tennessee, and he was with us then. We remained there until January, 1864, and in that month we were ordered from Tennessee to North Carolina, and passed through Wythe county on the railroad, and on our way Austin got off at Rural Retreat, or near there, and was absent a month or six weeks. I can't be positive as to the time, and my recollection is he came to us the last of February or the first of March, 1864, at Kinston, North Carolina, *and I have no recollection* of his being absent after that until the surrender, April, 1865." And this same witness said "if he had been absent a week, or even three or four days,

*I think* I would have known it." Another of these soldier-wit-
nesses was Eli Hillenberg, a brother of Austin Hillenberg, whom
Austin charged with the starting and circulating of the rumor
of the illegitimacy of the child, Margaret, and of his disowning
her paternity, for the purpose and with the covetous design of
driving him to flee his home and the neighborhood so that he
(Eli) could get his (Austin's) property. This witness, in answer
to the question, "Was your brother, Austin Hillenberg, absent
from his command at any time after you left Goldsboro' in
the winter of 1864 up to the time of the surrender?" said, "He
wasn't until a few days before the surrender, probably a week
before; I did not know where he was until I got home; did not
know whether he was killed, captured, or what had become of
him." And, on cross-examination, in answer to the question
"How often was Austin Hillenberg at home during that year
(1864)?" said, "If it was 1864 when our command went from
Tennessee to North Carolina, he was at home then. I guess he
did not get on the train at Bristol when we did; he come up to
us in *four* or *five days* at Goldsboro'." It is worthy of note just
here that the witness, Vaught, the lieutenant, said that Austin
Hillenberg got off the train at Rural Retreat in January, 1864,
"and was absent a month or six weeks; I can't be positive as to
the time, and my recollection is he came to us the last of Feb-
ruary, or the first of March, 1864, at Kinston, North Carolina."
Here is a very wide discrepancy between the positive specifica-
tions of these two chief soldier-witnesses. Mrs. Catherine Hillen-
berg, the wife of Eli Hillenberg, in answer to the question, "How
far did you live from Austin Hillenberg in 1864?" said, "Between
a quarter and a half mile"; and then, in answer to the question,
"Was Austin Hillenberg at home with his family at any time
during the year 1864?" said, "I don't know whether he was or
not; I don't think he was. I can't recollect if he was at home
in that time." Another soldier-witness, H. S. Poff, stated:
"When we left Tennessee in January or February, 1864, he
(Austin Hillenberg) stopped at home. I stopped off with him,

but only stayed five days, and then joined my regiment at Goldsboro', North Carolina. Austin Hillenberg stayed at home *about fifteen days*, and then joined us at Goldsboro', North Carolina. He was not absent from his company more than a day at a time until when we started on the march from Gilmore's lines to Petersburg, in March, 1865, just before the surrender. I missed him then, but did not know where he was—whether on duty behind us, or where he was."

S. J. Stoffey, another soldier-witness, was asked the question, on cross-examination, "Don't you recollect, that, in the summer of 1864, after Austin Hillenberg had received the bad news from home, which you mentioned in your examination-in-chief, he was then shortly afterwards absent from your company for a time?" and he answered, "*Not to my recollection.*"

This testimony of these soldier-witnesses was supplemented by the testimony of sundry witnesses, who testified that they did not see Austin Hillenberg at home during the summer or fall of 1864; and chief of these were Mrs. Fannie Wilson, a daughter of Mrs. Austin Hillenberg, and her husband, Frank Wilson, who admitted that they were at enmity towards D. H. P. Scott and his wife, Margaret, and did not recognize or have intercourse with them.

Against all this evidence of the appellees, the appellants, D. H. P. Scott and wife, opposed the testimony of a great number of Austin Hillenberg's disinterested immediate neighbors, who swear, positively and unqualifiedly, that Austin Hillenberg was at his home frequently in August and the fall of the year 1864; that they saw him at various times and places during that time, and that he was at their houses and ate with them at their tables. These witnesses are unimpeached, and A. C. Flannagan, a soldier in the same company with Austin Hillenberg, swears positively that he came home with Austin Hillenberg in April or March, 1864, and returned with him to the army; and that after that, in 1864, he was absent from the army between that time and the close of the war. It is proved by a cloud of witnesses that

he was a very bad soldier; a frequent and inveterate deserter; that he was at his home much and often in the years 1861, 1862, 1863, 1864 and 1865, and especially and distinctly that he was at his home in the summer and fall of 1864.

In this conflict of evidence on the part of witnesses who were examined for the appellant and the appellees, the great *preponderance* of evidence—both as to numbers, disinterestedness, and consistency of statement and recollection, is in favor of the appellant, who, with the presumption of law in favor of the legitimacy of his wife, Margaret Hillenberg, is entitled to the benefit of the doubt, and to the preponderance of evidence in favor of that presumption.

And this presumption has been restored to full force, against the conflict of evidence, by the acts and conduct of Austin Hillenberg himself after the birth of Margaret Hillenberg, indicating decisively his belief and recognition of the child as his. In the case of *Stegall* v. *Stegall's Adm'r, supra,* Chief Justice Marshall said: "In such case as this, if the marriage had taken place in such an advanced state of pregnancy that the situation of the wife must have been known to the husband, I should be disposed to consider it as a recognition of the child afterwards born. Any conduct of the husband, after the birth, indicating a belief that the child was his, would have been entitled to great weight, and would probably have been decisive."

Austin Hillenberg deliberately recognized the child, Margaret, as his child from her birth until his death, not only by nourishing, clothing, schooling, and keeping her under his own roof, and treating her as a member of his family, but also by deliberately recording, in his own handwriting, her birth in his little family testament in the words and figures following, to-wit: "Margaret Hillenberg was born in the year of our Lord, May the 15th, 1865." And Austin Hillenberg solemnly declared to the deputy clerk of Wythe county that the said Margaret was his daughter, when application was made to him for the marriage license of D. H. P. Scott and the said Margaret Hillenberg, which was issued on the 10th day of April, 1882. Thus, in the

most solemn manner, did Austin Hillenberg recognize and declare that the said Margaret Hillenberg was his child from the day of her birth to the day of his death. And before he died, he openly and explicitly said who it was that started the report that his child, Margaret, was illegitimate, and the purpose for which it was originated, charging that it was started by his brother, Eli, and that nobody but his own kinsfolk told any such stuff as that; that Eli wanted him away so that Eli could get what he had.

We are of opinion that, upon the proofs in the case, considered in reference to the principles of law applicable to the case, Margaret Hillenberg, the wife of appellant, D. H. P. Scott, ought and is to be deemed the legitimate child of Austin Hillenberg, deceased, by his wife, Elizabeth Hillenberg, and a capable heir at law of said Austin Hillenberg; and that the decree of the circuit court complained of is erroneous in declaring her to be illegitimate and incapable of taking as heir of her father, Austin Hillenberg; and that the said decree be reversed and annulled for this error. And we are further of opinion that the said decree should be corrected for the error of holding and adjudging that Daniel Hillenberg derived no support from the Austin Hillenberg land since the death of the said Austin, June 11th, 1884, and charging upon the said land one-half of that support from that date; whereas it should have charged that land with one-half of Daniel Hillenberg's support only from the date of Elizabeth Hillenberg's death, which occurred April 25th, 1885— the proof in the record being overwhelmingly that during the life-time of the said Elizabeth, the said Daniel received one-half of his support from the Austin Hillenberg land. For the correction of these errors, and for the partition of the land of Austin Hillenberg, as prayed for in the bill filed by the appellant, D. H. P. Scott, this cause is remanded to the circuit court for further proceedings in accordance with this opinion.

DECREE REVERSED.