BARKER v. BARKER et al.

(Supreme Court, Appellate Division, Second Department. April 14, 1916.)

1. WILLS ☞533—CONSTRUCTION—DESIGNATION OF DEVISEES—PER STIRPES OR PER CAPITA.

Under a devise in trust for maintenance of two sons during their lives, thereafter the real estate in fee "to their heirs and descendants," if none to testator's heirs, on death of either son "his share (one-half) of the income" to his heirs until death of the other son, and death of both sons to end the trust, the sons' heirs take per stirpes.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1147; Dec. Dig. ☞533.]

2. BASTARDS ☞3—PRESUMPTION OF LEGITIMACY—EVIDENCE.

Upon attack of legitimacy of issue of a second marriage, evidence of the mother's shortly preceding first marriage, with no evidence of its dissolution, both parties to the first marriage being under 18, with slight acquaintance, and never consorting or cohabiting as husband and wife thereafter, held not sufficient to overcome the presumption of legitimacy.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 4, 5; Dec. Dig. ☞3.]

3. BASTARDS ⬤�longrightarrow3—PRESUMPTIONS—BURDEN OF PROOF.

One attacking the legitimacy of issue of a second marriage by alleging a prior existing marriage of one spouse has the burden of proof that the prior marriage had not been dissolved.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 4, 5; Dec. Dig. ⬤⟶3.]

4. BASTARDS ⬤⟶3—PRESUMPTIONS—CONFLICTING PRESUMPTIONS.

To support an attack on legitimacy of issue of a second marriage, it is not sufficient to offer evidence of the mother's first marriage, preceding the second by a month, with no evidence of dissolution of the first, as the presumption of its continuance is not as strong as the presumption of legitimacy.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 4, 5; Dec. Dig. ⬤⟶3.]

5. BASTARDS ⬤⟶3—PRESUMPTIONS—ANNULMENT.

Where legitimacy of issue of a second marriage is attacked, the presumption in favor of legitimacy that the mother's shortly preceding first marriage had been dissolved before her second marriage is not overcome by testimony of the husband of the first marriage, whose life has been wandering, that he had not dissolved the marriage or received process for that purpose, as he might have been served with publication without his knowledge.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 4, 5; Dec. Dig. ⬤⟶3.]

6. BASTARDS ⬤⟶3—PRESUMPTION.

Where legitimacy of issue of a second marriage is attacked, the presumption that a shortly preceding first marriage of the mother had been annulled before her second marriage cannot be indulged in, if it appears that a judgment, after the second marriage, annulled the first.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 4, 5; Dec. Dig. ⬤⟶3.]

7. MARRIAGE ⬤⟶65—COLLATERAL ATTACK—LACK OF JURISDICTION.

Under Domestic Relations Law (Consol. Laws, c. 14) § 7, providing that a marriage of parties under 18 is void from the time its nullity is judicially declared, a court cannot dissolve such marriage ab initio.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 139; Dec. Dig. ⬤⟶65.]

8. MARRIAGE ⬤⟶11—WHO MAY MARRY—PRIOR EXISTING MARRIAGE.

Under the terms of Domestic Relations Law (Consol. Laws, c. 14) § 6, a marriage contracted by a person whose spouse by a prior existing marriage is living is void.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 30; Dec. Dig. ⬤⟶11.]

9. MARRIAGE ⬤⟶58(5)—ANNULMENT—FORM OF REMEDY.

A marriage void because of a prior existing marriage is subject to annulment, under Code Civ. Proc. § 1743.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 120; Dec. Dig. ⬤⟶58(5).]

10. INFANTS ⬤⟶43—TERMINATION OF TRUST—MORTGAGE BY TRUSTEE—EFFECT.

Under Real Property Law (Consol. Laws, c. 50) §§ 105, 107, a mortgage by trustee, under order of court, of property devised in trust for lives, with remainder in fee, is not valid as to infant remaindermen, whether represented upon the application for order to mortgage or not.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 94; Dec. Dig. ⬤⟶43.]

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

11. PARTITION ☞85—RELIEF—ALLOWANCE FOR IMPROVEMENTS.
　　As a condition of partition a court may make an allowance to such
cotenants as have subjected their interests to mortgages and thereby paid
for improvements.

　　[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 236–245; Dec.
Dig. ☞85.]

Cross-Appeals from Special Term, Kings County.

Action for partition by Charles V. Barker against Frances E. Barker
and others. From an interlocutory judgment of the Special Term (92
Misc. Rep. 390, 156 N. Y. Supp. 194), cross-appeals were taken by the
plaintiff and various defendants. Modified and affirmed.

Argued before JENKS, P. J., and THOMAS, MILLS, RICH, and
PUTNAM, JJ.

Hugo Hirsh, of Brooklyn (Emanuel Newman and Benjamin Reass,
both of Brooklyn, on the brief), for plaintiff.

Andrew V. Van Thun, Jr., of Brooklyn (William A. Kirk, of New
York City, on the brief), for defendants Archer, Barker, and Miller.

Charles L. Craig, of New York City, for guardian ad litem of
Samuel P. Barker, Jr.

Robert H. Haskell, of Brooklyn (James M. Gorman, of New York
City, on the brief), for infant defendant Beatrice Arabelle Barker.


THOMAS, J. The testator, dying in 1875, gave by will to his
daughters annuities charged on his estate, declared inalienable during
several lives, and his property, subject thereto, in trust to apply the
income to the education, support, and maintenance of his sons John
and Samuel during their lives, and added:

"And on their deaths the same shall belong and descend (the real estate in
fee) subject as aforesaid to their heirs and descendants—and if none, then to
my heirs at law, and in case of the death of either said John A. G. or Samuel
P. then his share (one-half) of the income or profits shall be paid to the heirs
of such decedent until the death of the survivor of my said two sons—it being
my will that the same shall remain in trust as aforesaid until the death of
both of my said sons."

The sons are dead. John left a son, the plaintiff, and Samuel sons
and daughters, other than the annuitants, and a granddaughter, Beatrice
A. Barker, if she is the legitimate child of Charles S. Barker, who
predeceased his father, Samuel. The trustee, in March, 1906, pur-
suant to order of the court, executed a mortgage on certain of the
property for $30,000. There are three questions: (1) Does John's
son take one-half of the remainder, or do the heirs of John and the
heirs of Samuel take as a class? (2) Is Beatrice A. Barker the legiti-
mate child of Samuel's son Charles, and so entitled to take as one of
his heirs? (3) Is the mortgage a valid lien upon the interests of the
infants Samuel P. Barker, Jr., and Beatrice A. Barker, if the latter
is entitled to take?

[1] It was decided correctly that the heirs of John and Samuel took
per stirpes and not per capita. If it be considered only that the whole
estate was charged with annuities and inalienable for some lives, and

that subject to such charge it was given in its entirety to trustees for the common maintenance and education of John and Samuel, without suggestion of separate interests, an opposite conclusion would be aided. The provision that the testator's heirs should take in default of "their heirs and descendants" raises the question whether the testator intended his heirs to take, if one life beneficiary died without leaving issue, and at least does not weaken the construction that the combined heirs of each of the two brothers take equally. However, John and Samuel could not have common descendants, and the declaration that each son took one-half of the income and the provision that his heirs should take it after him indicate the testator's intention to divide the estate into two shares, one for each line of descent, and that the heirs of each son should take correspondingly in the corpus.

It has been suggested that, where a trust intervenes, the fact that a person takes a beneficial interest in the income is not evidence that he took of the principal. However, in the present case, the heirs of a son dying before the trust ends, to whom the income is given, are at least presumptive takers of some interest in the remainder, and I conceive of no reason for alloting them a one-half share in the income, unless it was meant thereby to give them one-half of the estate out of which it arose, to vest in possession at the termination of the trust. It is not to be thought that the testator intended to endow for a period John's descendants with half of the profits of the estate and then take it away in part to augment the interests of the descendants of the other son.

It is suggested that the testator expectably would desire to benefit equally all of his grandsons. But he showed his intention to benefit them per stirpes, as he gave the heirs, however few, of one dying, half of the usable income, while he kept all the other grandchildren, however many, to the same half. But his first concern was his sons, and he naturally foresaw each as the head of a family, and thought of each dying and leaving descendants, and for each family as a unit he made provision for one-half of the income.

The appellant, as to this phase of the case, relies upon Bisson v. West Shore Railroad Co., 143 N. Y. 125, 38 N. E. 104. But the difference is essential. In that instance there was but one life beneficiary, the widow, and her heirs and her husband's heirs, not their descendants, were grouped into one class to take, and, being so unified, it was understandable to add "their heirs and assigns forever, share and share alike." The very technical words significant of equality were used there, but not here.

[2-4] The next question relates to the legitimacy of Beatrice Arabelle Barker. Beatrice A. Barker's mother, now Mrs. Dorgeloh, was married to one Murtha in the month of May, 1897, prior to her marriage to Beatrice's father in June of that year. The fact that Mrs. Dorgeloh, a defendant here, entered into the first marriage, was determined, and as I think correctly, by the judgment entered upon a verdict directed by the court. The other issues in this action of partition were then tried at Special Term, and full credit given to the finding of the first ceremonial marriage. But it was considered that,

although the first marriage was at one time a fact, the parties who accused the legitimacy of the issue of the second marriage must show that the first marriage, at the time of the second marriage, had not been dissolved, and that both parties to it were competent to contract it. The evidence shows that each party to the first marriage was under the age of consent, as the woman was less than 16 and the man less than 18 years of age; that their acquaintance had been slight; that they saw each other but casually shortly after the ceremony; that they never cohabited or consorted as husband and wife; that the man married again and was living with the party to that marriage; that the woman Dorgeloh married Charles Barker shortly after her first marriage, and that the parties lived together for a number of years, until the second husband's death; and that Beatice A. Barker was the issue of such marriage. So the second marriage was valid, unless the first marriage was an impediment. Under such circumstances the burden rested upon those denying the girl's legitimacy to show that the first marriage had not been dissolved, for the presumption of its continuance was not as strong as the presumption of legitimacy. Matter of Meehan, 150 App. Div. 681, 135 N. Y. Supp. 723.

[5] Murtha did testify that he had not sought to dissolve the marriage and had not received process for that purpose. But his life was wandering, and his residence ambulatory. Process might have been effectively served by publication and thereupon the marriage dissolved without his knowledge. Mrs. Dorgeloh, who had married again after the death of Barker, was a witness; but she was not questioned on the subject. Therefore the court was privileged to indulge the presumption that the issue of the second marriage was legitimate. Sparks v. Ross, 75 N. J. Eq. 551, 73 Atl. 241; Coal Run Coal Co. v. Jones, 127 Ill. 379, 8 N. E. 865, 20 N. E. 89; Pittinger v. Pittinger, 28 Colo. 308, 64 Pac. 195, 89 Am. St. Rep. 193; Chancey v. Whinnery [Okl.], 147 Pac. 1036.

[6-9] Upon the argument of this appeal, proof was tendered in behalf of Beatrice A. Barker that after the judgment herein Mrs. Dorgeloh procured a judgment in this state annulling the first marriage in an action against Murtha, declaring the marriage void ab initio upon the ground that it was procured by false representations and that the parties were not of the age of consent. I conclude that the record should not be received. Its effect would be to reverse, not to affirm, the finding of legitimacy, as it would show that at the time of the second marriage the first marriage had not been dissolved, for, with such judgment before it, this court could not presume that Mrs. Dorgeloh had brought an earlier action for annulment. Nor could such judgment of annulment operate to dissolve the first marriage ab initio. The judgment could not be broader than the statute authorizing it, which declares such marriage void only from the time it is annulled. Domestic Relations Law, § 7. Moreover, the proposed judgment of annulment would not validate the second marriage, as that when made would be void under the conditions stated in section 6 of the Domestic Relations Law. The second marriage was subject to annulment by

judgment recovered pursuant to section 1743 of the Code of Civil Procedure.

[10] The next question is whether the mortgage for $30,000 is valid against Beatrice A. Barker and Samuel P. Barker, Jr. The mortgage was made in March, 1906, and the trust continued until the death of the life tenant, Samuel P. Barker, in 1912. Upon the application to the court for leave to execute the mortgage, Samuel P. Barker, Jr., an infant, was represented by a guardian ad litem; but Charles S. Barker, a son of Samuel P. Barker, and the father of Beatrice A. Barker, died in 1901, and I do not find that Beatrice A. Barker was a party to the proceeding. It appears that with the avails of the mortgage a new building was erected on the property, and that the rents were thereby increased from $10,500 a year to $25,000 a year. It was probably the duty of those who represented the infants in this action to call attention to the attempt to mortgage their interest in the remainders, notwithstanding the marked benefit accruing to them from the building.

It is insisted in their behalf that the court had no authority to authorize the mortgage. On the other hand, it is urged that the court was enabled to authorize the mortgage by Real Property Law, §§ 105 and 107, as amended by chapter 136, Laws of 1897. That the court did not have the power before such amendment to authorize the trustee to mortgage the remainders, and that the statute did not intend to confer it, was decided in 1895 in Losey v. Stanley, 147 N. Y. 560, 42 N. E. 8. In 1911 it was decided in Matter of Easterly, 202 N. Y. 466, 474, 96 N. E. 122, that section 105 of the Real Property Law (chapter 50 of the Consolidated Laws [formerly section 85, chapter 547, Laws of 1896, as amended by chapter 136, Laws of 1897, and chapter 311, Laws of 1898, and also Revised Statutes, part 2, c. 1, tit. 2, § 65, as last amended by chapter 886, Laws of 1895]) "deals with the trust estate only, and an order for a sale pursuant to the statute should not purport to convey the independent vested estate in the remaindermen." Later, upon a motion for reargument, the attention of the court was called to the amendment made by chapter 242 of the Laws of 1907 to section 87 (now section 107) of the Real Property Law, and the court disclaimed any consideration of such amendment in reaching its decision, but it was said that, if the amendment "has the effect claimed by counsel for the respondent, nevertheless the decision on that appeal should not be changed." I consider that the trust had no relation to the remainders, and that the court could not authorize the trustee to mortgage that to which he had no title. As concerns the infant, Beatrice A. Barker, there was no attempt to bind her interest, and in my judgment Samuel P. Barker as a remainderman was not affected by the order.

[11] However, it would be quite unjust to allow the infants to profit by the value of the land enhanced by the new buildings, and it is, I think, within the power of the court to make an allowance to such of the tenants in common as have subjected their interests to mortgages and thereby paid for the improvements. Ford v. Knapp, 102 N. Y. 135, 6 N. E. 283, 55 Am. Rep. 782. The present record does

not furnish data that enable proper disposition of the matter. The order in the mortgage proceeding authorized two funds for two of the daughters. Perchance it may be necessary to take that into consideration. It is necessary to remit the case, so far as this single question is concerned, to the Special Term for further consideration, and for an equitable adjustment of the shares as the facts may warrant. I think that it would be greatly for the interests of the infants if the status of the mortgage as established by the judgment could be left undisturbed, and thereby the result indicated reached.

It was found that the trustee had demised the property to Bedell Bros. for the term of ten years from 1911, and there was a conclusion of law that such lessee firm is entitled to and has a lease for such term. To the conclusion of law there is an exception. It was not necessary to except to the finding of fact in order to raise the question of the effect of the lease upon the interests of the remaindermen. The lease for the given term seems to be violative of section 106 of the Real Property Law. The Bedell Bros. are not before the court, and it is deemed advisable that the question be remitted to the Trial Term, to the end that the question may be determined with Bedell Bros. before the court.

The interlocutory judgment, modified in conformity herewith, should be affirmed, without costs to any of the parties. All concur.