On motion to dismiss appeal, submitted February 7, motion denied
March 4, 1924, argued on the merits March 18, affirmed April
13, 1926.

# ARTHUR MYRON RICHTER *v.* ROSA RICHTER, RUTH RICHTER AND SARAH RICHTER.

## (223 Pac. 543; 245 Pac. 321.)

**Appeal and Error—Notice of Appeal Sufficient When.**

1. Notice of appeal from judgment is sufficient if it describes
with convenient certainty the decree appealed from and the court
to which it is taken.

**Appeal and Error—Notice of Appeal Held Sufficient, Though Referring to Original Decree "as Modified and Entered," etc.**

2. Where the court modified its original decree practically making
a new one, both being for plaintiff, defendant's notice of appeal,
reciting contents of the modified decree and stating the appeal to
be from the original "as modified," etc., *held* sufficient, since it informed plaintiff of the subject matter contested as fully as though
no reference to the original decree had been made.

### ON THE MERITS.

**Bastards—Decedent's Declaration That He had Divorced His First Wife for Infidelity, and That Child to Which She had Given Birth was not of His Procreation, Held Inadmissible in Proceedings by Child to Assert Rights to Inherit from Father.**

3. Declarations of decedent that he had divorced his first wife
because she was untrue to him, and that child to which she had
given birth was not of his procreation, *held* inadmissible in proceeding by child to assert right of inheritance, where his access to her
covered a period which, in view of ordinary gestation, would result in birth of such child.

**Bastards—Testimony of Attorney Who Drew Decedent's Will, as to Decedent's Declarations Imputing Illegitimacy to Child of Decedent, Held Inadmissible.**

4. Testimony of attorney who drew decedent's will, as to decedent's declarations denying legitimacy of a child begotten while
he was cohabiting with its mother, who was at that time decedent's wife, *held* inadmissible.

**Evidence.**

5. Law presumes chastity and virtue, and not lust and concubinage.

1.  See 2 R. C. L. 109.
5.  See 3 R. C. L. 725.

Bastards—Evidence Held to Show That Child Begotten by Decedent was Legitimate.

6. Evidence that decedent's access to his first wife covered a period which, in view of ordinary gestation, would result in birth of a child begotten by him during that period, *held* to show that such child was legitimate.

See 3 C. J., pp. 1223, 1226.
Bastards, 7 C. J., p. 940, n. 31, p. 941, n. 34, p. 944, n. 60, p. 945, n. 75, 79, p. 946, n. 84, 86.
Competency, 12 C. J., p. 233, n. 68.
Evidence, 22 C. J., p. 192, n. 80 New.
Witnesses, 40 Cyc., p. 2193, n. 90 New, p. 2222, n. 3, 4.

From Multnomah: GEORGE W. STAPLETON, Judge.

In Banc.

MOTION DENIED.

For the motion, *Messrs. Hodges & Gay.*

*Contra, Messrs. Bernstein & Cohen.*

McBRIDE, C. J.—This is a motion to dismiss an appeal on the ground that the notice of appeal does not sufficiently state the judgment appealed from. The contention arises out of the following circumstances: On September 20, 1923, the Circuit Court entered in favor of plaintiff the following decree:

"It is considered, ordered and adjudged that the plaintiff, Arthur Myron Richter, is entitled to, and he is hereby decreed to be, the owner, in fee, of an undivided one-fourth interest in lot numbered six (6) in block twenty-nine (29) in Caruthers Addition to the City of Portland, according to the maps and plats thereof on file with the county clerk of Multnomah County, the same being, lying and situate in Multnomah County, and State of Oregon.

"It is further ordered and decreed that said plaintiff, Arthur Myron Richter, do take, have and recover of and from the defendants, Rosa Richter, Morris A. Richter, Ruth Richter, and Sarah Richter, and each of them, jointly and severally, judgment for the sum

of $7,000, and his costs and disbursements herein incured, taxed at $——, and that execution issue therefor.''

And thereafter, on the fourteenth day of November, 1923, the court entered the following decree:

''Now at this time, the court having filed its findings of fact and conclusions of law herein, which are in favor of the plaintiff and against the defendant, Rosa Richter, and it appearing that the prior decree entered on the 20th day of September, 1923, should be modified,

''It is now ordered that said prior decree be and the same is hereby modified, and the following decree entered:

''Ordered and adjudged and decreed that the suit be dismissed as against the defendants Morris A. Richter, Ruth Richter and Sarah Richter, and it is further

''Ordered and adjudged and decreed that the plaintiff have and recover judgment of and from the defendant, Rosa Richter, for the sum of $6454.65 and that the plaintiff be decreed to be the owner of a one-fourth interest in the real property described as:

''Lot numbered six (6) in block numbered twenty-nine (29) in Caruthers Addition to the City of Portland, according to the maps and plats thereof on file with the county clerk of said county and state, subject to the dower right of the defendant, Rosa Richter, and that neither party recover costs herein.''

Thereafter the defendant, the appellant here, on the fifteenth day of November, 1923, served and filed the following notice of appeal:

''You and each of you will please take notice that the defendant, Rosa Richter, hereby appeals from a judgment and decree entered against her in the above entitled court and cause on the 20th day of September, 1923, as modified and entered on the 14th day of November, 1923, in favor of the plaintiff herein and against the defendant, Rosa Richter, for the sum of

$6454.65, and that the said plaintiff herein be entitled to a one-fourth interest to the property described as lot numbered six (6) in block numbered twenty-nine (29) in Caruthers Addition to the City of Portland, according to the maps and plats thereof, on file with the county clerk of Multnomah County, and State of Oregon, subject to the dower right of the defendant, Rosa Richter, and from the whole of said decree to the supreme court of the State of Oregon."

It is objected that this is merely an appeal from the decree of the twentieth day of September, 1923, and does not constitute notice of appeal from the later decree of the fourteenth day of November, 1923.

1, 2. It is sufficient notice if the notice of appeal describes with convenient certainty the decree appealed from and the court to which the appeal is taken; and it is very evident to our minds that this notice does so, and that the plaintiff is just as fully informed by the notice here of the matter which would be contested in the Supreme Court as he would have been if no reference had been made to the original decree of September 20, 1923. It is true that the alleged modification is so extensive as practically to constitute a new decree, in particular, as to the amount of the judgment and as to the costs, but both were in the same case and both were in favor of the plaintiff and against the appellant here and respondent could not be misled by the reference to both decrees.

The motion is denied.        MOTION DENIED.

Affirmed April 13, 1926.

ON THE MERITS.

(245 Pac. 321.)

For appellant there was a brief and oral arguments by *Mr. D. Solis Cohen* and *Mr. Martin L. Pipes.*

For respondent there was a brief and oral argument by *Mr. C. M. Hodges.*

BURNETT, J.—The plaintiff, claiming to be the son of Philip Richter, deceased, sues the defendant Rosa Richter, the widow of his father, and her three children by the second marriage of the father, for an accounting of the property devised to them by the decedent by a will in which the plaintiff was neither named nor provided for. After issue joined the court rendered a decree to the effect that the suit be dismissed as against the three children of the defendant Rosa Richter, that the plaintiff have and recover judgment from the defendant Rosa Richter for $6,45.65, and that he be decreed to be the owner of a one-fourth interest in certain real property, subject to her dower right. The defendant, Rosa Richter, alone has appealed.

In substance, the will of Philip Richter devised all his property to his wife, Rosa Richter, and provided therein that she should give to his three children, Morris Richter, Ruth Richter and Sarah Richter, or either of them, such part of his estate and at such time as she desired. Admittedly, there was no provision for the plaintiff and he was not named in the will.

117 Or.—40

As conceded by all parties, there is but one question to be determined, which is whether the claimant-plaintiff herein is the son of Philip Richter, deceased. By documentary testimony concerning which there is no dispute, it is disclosed that the decedent was married to Sheina Kendzerska, the plaintiff's mother, his first wife, in Russia, May 29, 1881. The marriage was according to Jewish ceremony and was performed by a rabbi of that faith. After living with her for a time, the deceased, Philip Richter, came to America, leaving her in Russia. According to his passport, issued November 12, 1884, by the Department of State of the United States, and the indorsements thereon, he returned to and entered Russia March 17, 1885, and according to his Russian passport, also introduced in evidence, he left that country on his way back to America January 19, 1886. The undisputed testimony is that he lived with his wife several months of the time while he was in Russia during that period between March 17, 1885, and January 19, 1886. It also appears that while he was thus in that country they were divorced according to the laws in force there at that time, by the same rabbi who had previously married them, and soon thereafter the decedent returned to America and remained here continuously afterwards. The chronology, according to the documents and pleadings, may be set down as follows: The decedent and his first wife were married May 29, 1881. Leaving her in Russia, he came to America and remained here until his return to Russia, which country he entered March 17, 1885, and left the same January 19, 1886. The plaintiff was born August 29, 1886. When the child was about ten months of age his mother came to America, bringing him with her. Some months afterwards, according to undisputed

testimony, in New York, at a date not definitely fixed, however, there was a "peden aben," a ceremony held among the Jewish people when the first born is a son, and requiring the presence of the father and mother. By the uncontroverted declarations of those who witnessed it a ceremony of that sort for the plaintiff occurred in New York City after the arrival of the first wife with the plaintiff, then an infant, and there were present, participating therein, the decedent, Philip Richter, and the first wife, the plaintiff's mother, besides other people. The decedent took the part of father in that ceremony and acknowledged the child to be his son. Several witnesses, all relatives of the plaintiff, it is true, but uncontradicted, testified as to the marriage in Russia between the decedent and the plaintiff's mother, as to the divorce in that country, and the "peden aben" ceremony occurring in New York after the mother and the plaintiff had arrived in this country. The plaintiff himself gives testimony about interviews which he had with his father, the decedent, after the son had grown up to the age of twelve or fourteen years, in which the decedent acknowledged him as his son and wanted him to come to Oregon and live with him. This the son would not do because he desired to remain with his mother in New York. There is nothing to contradict the testimony thus given.

The defendant relies upon certain inconsistencies respecting material occurrences described but not stated with particularity of date in the testimony of some of the witnesses. Considering the matter for the present solely upon the documentary evidence in the shape of the passport into Russia and the passport out of that country, with the official indorsements thereon, we find that the decedent had opportunity

for access to his first wife while he was in Russia on his visit there from the United States, and that access covered a period which, in view of the ordinary period of gestation, would result in the birth of a child begotten by him while he was in Russia during that period.

*In re Biersack,* 96 Misc. Rep. 161 (159 N. Y. Supp. 519), was a case in which the question was as to the legitimacy of a child born of a *de facto* marriage, and it was said:

"Illegitimacy cannot be found unless the parties holding the burden of establishing it complete a chain of evidence which will not only demonstrate the fact and validity of the earlier marriage and its subsistence at the time of the later marriage, but will aggressively exclude every indication or suggestion which might conceivably rescue the second marriage from invalidity. *Fenton* v. *Reed,* 4 Johns. 52 (4 Am. Dec. 244); *Caujolle* v. *Ferrie,* 23 N. Y. 90; *Hynes* v. *McDermott,* 91 N. Y. 451 (43 Am. Rep. 677); *Matter of Matthews,* 153 N. Y. 443 (47 N. E. 901); *Tracy* v. *Frey,* 95 App. Div. 579 (88 N. Y. Supp. 874); *Matter of Meehan,* 150 App. Div. 681 (135 N. Y. Supp. 723); *Barker* v. *Barker,* 172 App. Div. 244 (158 N. Y. Supp. 413); *Maier* v. *Brock,* 222 Mo. 74 (120 S. W. 1167, 133 Am. St. Rep. 513, 17 Ann. Cas. 673); *Gamble* v. *Rucker,* 124 Tenn. 415 (137 S. W. 499); *Winter* v. *Dibble,* 251 Ill. 200 (95 N. E. 1093). * *

"A presumption like unto that which assumes legitimacy is also indulged in behalf of a second marriage, even though children, the fruit thereof, are not involved. There it finds its impulse in the Law's jealousy for the order of society. But the zeal of the law, which would prefer to find matrimony rather than vice, increases in its benign extravagance when it is called to the defense of legitimacy. That which is one of the strongest presumptions known to the law, when invoked in behalf of marriage, is said to be strengthened when its shield is raised above a child."

In *Town of Canaan* v. *Avery,* 72 N. H. 591 (58 Atl. 509), it was said:

"All children begotten while their parents are living together as man and wife are presumed to be legitimate, and this presumption cannot be rebutted by showing that the wife was guilty of adultery during the period of gestation."

In the note to *Dennison* v. *Page,* 29 Pa. 420, as reported in 72 Am. Dec. 649, it is said:

"That a child born during wedlock, or within the period allowed for gestation after the termination of the marital relation betwen husband and wife, is presumed to be legitimate, is a rule of law so conclusively established as not to require the citation of any authority to sustain it."

In *Egbert* v. *Greenwalt,* 44 Mich. 245 (6 N. W. 654, 38 Am. St. Rep. 260), it was said:

"The presumption of legitimacy of a child born in wedlock can only be overcome by clear proof of non-intercourse."

In *Scott* v. *Hillenberg,* 85 Va. 245 (7 S. E. 377), it is held that:

"The law presumes legitimacy where a husband recognizes the child as his, and impossibility of procreation is not established. Such presumption is not repelled by proof of circumstances, which only create doubts and suspicion; but the evidence of non-access of husband must be clear and positive."

"Where one has been begotten in lawful wedlock, while husband and wife were living together, his paternity and legitimacy are conclusively presumed." *Henry* v. *Lawson,* 167 Iowa, 557 (149 N. W. 605).

*People* v. *Case,* 171 Mich. 282 (137 N. W. 55), was an instance where the defendant was charged with the support of a child alleged to be his bastard son. The case is succinctly stated in the syllabus as follows:

"A married woman gave birth to a child June 25, 1911. It was shown that her husband terminated a penitentiary sentence October 15, 1910; that the minimum period of gestation was 240 days, the average 273, and the maximum 300. There was no proof whether he saw or had access to his wife during the 13 days after his release during which he might have been the father of the child. *Held*, that her evidence that it was a bastard begotten by defendant on September 30, 1910, was insufficient to rebut the presumption of legitimacy and to charge defendant as the father of the child."

In the body of the opinion the following language occurs:

"The rule that a child born in lawful wedlock will be presumed to be legitimate is as old as the common law. It is one of the strongest presumptions in the law. The ancient rule made the presumption conclusive, if the husband was within the four seas. The modern one permits the presumption to be overcome, but only upon proof which is very convincing. The presumption cannot be overcome by testimony of either the husband or wife that sexual intercourse did not take place between them during the period when such child must have been begotten." Citing authorities.

In Wisconsin the rule is thus stated in *Mink* v. *State*, 60 Wis. 583 (19 N. W. 445, 50 Am. Rep. 386), cited in *People* v. *Case, supra.*

"The law is well settled that the wife, on the question of the legitimacy of her children, is incompetent to give evidence of the non-access of her husband during the time in which they must have been begotten. This rule is founded on the very highest grounds of public policy, decency and morality. The presumption of the law is in such a case that the husband had access to the wife, and this presumption must be overcome by the clearest evidence that it was impossible for him, by reason of impotency or

imbecility, or entire absence from the place where the wife was during such time, to have had access to the wife, or to be the father of the child. Testimony of the wife even tending to show such fact, or of any fact from which such non-access could be inferred, or of any collateral fact connected with this main fact, is to be most scrupulously kept out of the case, and such non-access and illegitimacy must be clearly proved by other testimony.''

3. There is some testimony imputing to the decedent statements to the effect that he had divorced his first wife because she was untrue to him and that the child to which she had given birth was not of his procreation. In *Bell* v. *Territory,* 8 Okl. 75 (56 Pac. 853), it is said:

''It has been the well-settled rule, from the earliest times, as appears from the Roman, English, and American law writers, that neither husband nor wife will be allowed to give evidence tending to bastardize the offspring of the wife born or begotten during wedlock.''

See, also, *State* v. *Romaine,* 58 Iowa, 46 (11 N. W. 721); *Patterson* v. *Gaines,* 6 How. (U. S.) 550 (12 L. Ed. 553). This would lay out of the case all declarations of the father imputing illegitimacy to the plaintiff. In brief, neither spouse can be heard to befoul the marital nest under such circumstances.

It is undisputed that the decedent and his first wife, the mother of the plaintiff, lived together as man and wife for a time in Russia, when, according to the period of gestation, the product of the conception would be born at the date admitted to be the birthday of the plaintiff. The mother corroborates this. There is no dispute of it on the part of the defendant. It makes a great deal stronger case than any of those cited where the mother has undertaken to proclaim her own shame.

4. The attorney who drew the will testified that he required of the decedent the names of all his children or children of a deceased child, and that he gave him only the names of the three mentioned in the will. It is true that the attorney could give testimony about a legitimate question, founded on statements of the testator made at the time his will was executed, but there is a distinction between the competency of a witness and the competency of testimony. As said in *Egbert* v. *Greenwalt, supra,*

"The difference is wide between the competency of one to be a witness in a given case, and the right to use the witness to prove certain facts in his or her knowledge, however proper such facts may be in their own nature. There may be no ground whatever for excluding the person from the stand; but there may be sound reasons for refusing to permit him or her to swear to certain things or on certain subjects."

If the decedent could not be permitted to deny the legitimacy of a child begotten while he was cohabitating with its mother, who was also at the time the decedent's wife, much less could a third party be permitted to testify as to the decedent's declarations on that subject.

5, 6. The whole case of the defendant hangs upon the confusion of the plaintiff's mother on cross-examination in timing certain events with reference to certain Jewish festivals. That style of testimony only affects her recollection of dates. She is not in any way impeached as to the fact that her husband had access to her in Russia during a period in which the plaintiff might lawfully have been begotten by the decedent. At best, the testimony can only raise vague doubts as to the accuracy of her memory about dates and that, under authorities cited, does not overcome the presumption of legitimacy. The

defendant herself testifies that her husband told her that he had been married in the old country, but was divorced. The law strongly presumes chastity and virtue and not lust and concubinage. On the whole record the plaintiff is amply proven to be the son of the testator. Under the testimony and the precedents cited, the decision of the Circuit Court was clearly right and should be affirmed, with costs on the appeal in favor of the plaintiff.    Affirmed.

McBride, C, J., and Coshow and Rand, JJ., concur.