## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Angela I. Codynah

v.

Michael A. Mullen

January 6, 2003

Case No. CH02-781

BY JUDGE WILLIAM H. LEDBETTER, JR.

The question presented is whether the death of a child who is the subject of a paternity action moots the inquiry, at least where no financial matters are at issue and genetic testing is requested.

*Facts*

Keetyn Shane Codynah was born to Ms. Codynah on June 15, 2002. Ms. Codynah filed a petition on July 9, 2002, in the juvenile and domestic relations district court against Mr. Mullen, the putative father, for a determination of paternity.

During the pendency of the suit, the child died. The juvenile court held that the child's death divested it of jurisdiction and dismissed the petition. Ms. Codynah appealed.

The case was heard in this court on December 16, 2002. The pertinent facts are stipulated. Ms. Codynah and Mr. Mullen lived together for about ten months, separating in December 2001 or early January 2002. The child was born to Ms. Codynah on June 15, 2002. The parties were never married.

Mr. Mullen asks the court to dismiss the case on the ground that the child's death moots the issue of paternity. Ms. Codynah concedes that no financial issues are involved. Nevertheless, she seeks an order for genetic testing under Virginia Code § 20-49.3(A), arguing that Mr. Mullen's refusal to admit parentage of the child harms her reputation and that she "needs closure."

*Applicable Legal Principles*

Under common law, the treatment of illegitimate children was harsh. A child born out of wedlock was viewed as the child of no one, *filius nullius*. The child could not inherit nor was the child entitled to support, at least from the putative father.

The first amelioration of these harsh rules was the judicially-created presumption of legitimacy. This presumption, one of the strongest known in the law, is that a child born in lawful wedlock is presumed to be legitimate. Generally, the presumption can be rebutted only by a convincing showing of non-access or a physical impossibility to procreate. See, e.g., *Scott v. Hillenberg*, 85 Va. 245 (1888).

Next, statutes were enacted to legitimize children born of void and voidable marriages. Virginia Code § 20-31.1. These statutes are liberally construed for remedial purposes. See, e.g., *McClaugherty v. McClaugherty*, 180 Va. 51 (1942).

Further, statutes were adopted that allow illegitimate children to inherit from both parents, once parentage is established. Virginia Code §§ 64.1-5.1 and 64.1-5.2.

In 1968, the U.S. Supreme Court began a line of decisions that has brought illegitimate children within the protection of the equal protection clause on the issue of inheritance and for other claims. See, e.g., *Levy v. Louisiana*, 391 U.S. 68 (1968).

Finally, all states have enacted parentage statutes, specifically designed to provide a means for determining paternity of an illegitimate child. Virginia Code § 20-49.1 et seq. Once paternity is proven, the father as well as the mother has the legal duty to support the child.

(For discussion of these remedial changes in the legal principles regarding illegitimate children, see Swisher, Diehl, and Cottrell, *Virginia Family Law* (2d ed.) § 13-1 et seq.)

Under the Virginia parentage statute, there are several ways to establish parentage. One is scientific testing, which the court may order upon its own motion or upon motion of either party, and shall order if child support is at issue. Virginia Code § 20-49.3(A).

*Decision*

This court does not reach the result advocated by Mr. Mullen and apparently reached by the juvenile court that the death of the illegitimate child ipso facto divests the court of jurisdiction to determine paternity of that child

under Virginia Code § 20-49.1 et seq. Nevertheless, for the reasons explained below, the court will not order Mr. Mullen to subject himself to scientific testing and, since Ms. Codynah appears to concede that paternity cannot otherwise be proved, the case must be dismissed.

It is clear from a plain reading of the remedial common law decisions, the statutes, and the more recent constitutional law cases, that the primary thrust of all these changes to the old harsh laws regarding illegitimate children is financial, or economic, in nature. Most often, of course, the question of support is the driving concern. Other financial matters can be involved: inheritance, debts associated with the child's birth, social security benefits, recovery under workers' compensation laws, and wrongful death acts, to name a few.

But are financial or economic considerations, not present in this case, the sole and exclusive basis for which a paternity action can be pursued? Perhaps not. The social stigma of illegitimacy, which is not the fault of the child, may itself justify an action under § 20-49.1 et seq. (To be binding on the child, the child must be a party. *Gray v. Johnson*, 7 Va. App. 614 (1989); also see § 20-49.2.) There are no Virginia cases on the point.

In this case, however, the court need not formulate universal principles. The court is asked to compel Mr. Mullen to undergo scientific testing even though there are no financial or economic issues, the primary basis for paternity actions. The social stigma of illegitimacy is not an issue because the child is deceased.

Therefore, on balance, the court finds it inappropriate to use the mandatory testing provisions of the parentage statutes simply to assuage Ms. Codynah's concerns and to bring "closure" to this tragic situation. These are not legally cognizable bases for a paternity action under the circumstances of this case. Because it appears that Ms. Codynah cannot establish paternity by clear and convincing evidence without the genetic testing, the case must be dismissed.