44 245
115 331

ENOCH EGBERT v. ADAM GREENWALT.

*Criminal conversation—Married parties cannot disprove intercourse.*

The right to an action for damages for criminal conversation with plaintiff's wife is not barred by the fact that the act was done by violence, and that a criminal action will lie.

In an action for damages for criminal conversation the testimony of the husband and wife is inadmissible to disprove intercourse between themselves for the purpose of raising a presumption against the legitimacy of the wife's child.

A witness may be competent to testify to some facts, and nevertheless be disqualified from testifying in the same case to other facts equally within his knowledge and admissible in evidence.

Act 125 of 1861 does not abrogate the common law principle that the testimony of a wife is inadmissible to disprove intercourse with her husband for the purpose of imputing illegitimacy to her children.

Legitimacy is presumed, and where there has been opportunity for intercourse between husband and wife within such a period that a child born of the wife may be legitimate, there must be strong evidence to overcome the presumption and disprove the fact of their intercourse.

Error to Berrien.   Submitted June 11.   Decided Oct. 6.

TRESPASS ON THE CASE.   Defendant brings error.   Reversed.

*Edward Bacon* for plaintiff in error.   Married persons cannot testify to non-intercourse for the purpose of proving the paternity of a child upon another person than the husband: *Van Aernam v. Van Aernam* 1 Barb. Ch. 375; *Cross v. Cross* 3 Paige 139; 1 Greenl. Ev. §§ 28, 344.

*J. G. Turner* for defendant in error.

GRAVES, J.   Greenwalt recovered for alleged criminal conversation with his wife.   The suit was in the common form of an action on the case and was commenced in August, 1878.   The trial took place in February, 1879.   The whole

testimony to prove the imputed intercourse and establish the cause of action was given by Greenwalt and his wife. The act was represented as one to which she was an involuntary party, and as having been accomplished against her will by actual force and over the stoutest resistance of which she was capable. It was referred to some day in December, 1877, earlier than the 27th.

Egbert testified for himself and positively denied having had intercourse with her at any time. It was claimed for Greenwalt that the injury inflicted by his wife's violation was aggravated by her being left pregnant; and the court overruled the defendant's objections and permitted her to testify that her husband, in consequence of having fever and ague, did not sleep with her for some time prior to defendant's connection with her, and had not slept with her since; that soon after the occurrence she discovered she was pregnant, and then informed her husband that the child was defendant's; that it was born the 23d of August, 1878. The plaintiff testified that he did not sleep with her for three months; that in the latter part of June, 1878, he noticed his wife's situation, and she then confessed to him. But he had continued since to live and cohabit with her.

. The record contains a general exception to the court's refusal to consider the evidence sufficient to bar the action. It is too vague to deserve notice. But as counsel adverted to it a few words may not be amiss. The point of the objection is understood as being that the nature of the action excluded the idea of violence and contemplated that the wife's participation was voluntary and not forced, and that as the case made by the evidence negatived her consent and proved that she was debauched by violence, the action failed.

The position is not tenable. The common law, in giving this remedy, instead of making the husband's right of action depend on his wife's having consented to her defilement, has invariably, whatever the truth might be, decisively assumed that she did not assent but was overcome by force, and the action has been sustained just the same, whether as matter of fact her will concurred or she was outraged by actual violence.

Bac. Ab. Marriage and Div. 551–553; 3 Bl. Com. 139; 1 Chitty Pl. (7th Eng.: 16th Am. ed.) 140, 141, 150, 151, 188; Broom's Com. 847, 848; 2 Hilliard on Torts, 507; *Forsythe v. State* 6 Ohio 23. And there seems to be no basis in justice or policy for the position that if the personal wrong is accompanied by circumstances of such atrocity as to elevate it to the public offense of rape, the private remedy is thereby either taken away or suspended. Cooley on Torts 86 to 90. It is not reasonable to convert the wife's innocence into a shield to save her assailant from prosecution for his private wrong to her husband. Lord Holt seems to have recognized the principle that both remedies were admissible in a case of actual violence; and alluding to an attempt to carve out cause for a third proceeding to be carried on in the Bishop's Court, he said: "If a man solicit a woman, and goes gently to work with her at first, and when he finds that will not do, he *proceeds to force*, it is all one continued act, beginning with insinuation and ending with force." *Rigaut v. Gallisard* 7 Mod. 78.

In view of the rulings made on admitting evidence and in charging the jury it is unquestionable that the verdict must have been much influenced, if not determined, by the statements tendered on the part of the plaintiff and his wife and received by the court for the purpose of causing the jury to believe that they had no sexual intercourse at the time the child was begotten, and that the wrongful act of the defendant must have been the occasion of her condition, and this evidence in my opinion was not admissible. The parties were living amicably under the same roof and there was no serious obstacle to intercourse. There was such access as gave opportunity. That is not denied, and as matter of fact it was not asserted that intercourse did not take place.

It is not perceived that the wife's being admitted as a witness was objected to; and assuming, for this case, that she was entitled to be called, it does not follow that her personal knowledge of whatever in itself might be pertinent to the issue, was rendered provable by her if objected to. The difference is wide between the competency of one to be a witness in a given case, and the right to use the witness to prove

certain facts in his or her knowledge, however proper such facts may be in their own nature. There may be no ground whatever for excluding the person from the stand; but there may be sound reasons for refusing to permit him or her to swear to certain things or on certain subjects. The system of legal evidence has afforded always, and affords still, many illustrations. The statute offers an example where it excludes certain communications unless their disclosure is mutually assented to.

According to an ancient rule of the common law the evidence of neither husband nor wife could be received to disprove the fact of sexual intercourse (*Rex v. Book* 1 Wils. 340); and Lord Mansfield declared that it was "founded in decency, morality, and policy" (*Goodright v. Moss* Cowper 591); and no judge or author has ever dissented from his strong approval. The reason of the rule has prescribed limits to its application, but there is no present occasion for special reference to any of the qualifications. That the Legislature intended to abrogate it is not to be assumed. No one will contend that the course of the legislation of 1861 was unfriendly to it, nor can it be fairly argued that the terms or spirit of the amendments then made have supplanted it. The general purpose the Legislature had in view was to sweep away a number of objections against the competency of witnesses, but not to break down any rule "founded in decency, morality, and policy;" and so far as ascertained, the courts, wherever these general changes have taken place, have considered this rule of the common law as untouched. *Tioga County v. South Creek Township* 75 Penn. St. 436; *Boykin v. Boykin* 70 N. C. 262; *Chamberlain v. People* 23 N. Y. 88; *People v. Overseers of Ontario* 15 Barb. 286; *Hemmenway v. Towner* 1 Allen 209; Stephens' Ev. art. 98. The effect of the statute upon the capability of the wife as a witness for the people in a prosecution against a person for having committed adultery with her, was fully discussed in *Parsons v. People* 21 Mich. 509; but it was not found necessary to consider the present questions. I think the evidence of the plaintiff and his wife which was adduced to show non-inter-

course between them, was not admissible. Whether some items might not have gone in for some other purpose need not be considered. They were offered and allowed to dis-prove sexual connection between the husband and wife, and establish as a necessary alternative that the defendant begot the child.

But let it be assumed that the evidence was lawfully before the court and jury, and then I think it was destitute of all force to prove non-intercourse, and that the court should have charged the jury to that effect. It was a maxim of the Roman law, and one which the common law copied, that the presumption is always in favor of legitimacy (Co. Litt. 126a) and that he is the father whom the marriage indicates (Co. Litt. 123; Domat pt. 1 b. 3, t. 6, § 5; and Montesquieu, alluding to it, observed that " the wickedness of mankind makes it necessary for the laws to suppose them better than they really are. Thus we judge that every child conceived in wedlock is legitimate, the law having a confidence in the mother as if she were chastity itself." Spirit of the Laws, B. 6, c. 17; and D'Aguesseau laid it down that "whilst the birth of children can be ascribed to a legitimate source, the law will not suppose criminality." Greenleaf says that where the husband and wife cohabit together as such, and no impotency is proved, the issue is conclusively presumed to be legitimate, though the wife is proved to have been at the same time guilty of infidelity. 1 Ev. § 28. The current of authority is in favor of qualifying this statement, and instead of regarding the presumption as conclusive, to require it to apply with great force but subject to be overcome by admissible facts and circumstances of such cogency as to render belief necessary. *Morris v. Davis* 5 Cl. & Fin. 163; Wharton's Ev. §§ 1298, 1299, 1300; Best's Ev. (Wood's ed.) 426, 464, 465; Stephen's Ev. art. 98.

In the case of the *Banbury Peerage* the House of Lords dealt with the presumption and the degree of evidence necessary to overcome it, in this language: " In every case where a child is born in lawful wedlock, the husband not being separated from his wife by a sentence of divorce, sexual

intercourse is presumed to have taken place between the husband and wife, until that presumption is encountered by such evidence as proves, to the satisfaction of those who are to decide the question, that such sexual intercourse did not take place at any time when, by such intercourse, the husband could, according to the laws of nature, be the father of such child." 1 Sim. & S. 155. And in *Bury v. Phillpot*, the Master of the Rolls, afterwards Lord Cottenham, ruled that when opportunity existed for sexual intercourse within such period that the child in question might have been begotten by the husband, mere probabilities can have no weight against the legal inference : 2 Myl. & K. 349 ; and see *Kleinert v. Ehlers* 38 Penn. St. 439 ; *Dennison v. Page* 29 Penn. St. 426 ; *Hargrave v. Hargrave* 9 Beav. 552.

To overcome the presumption and disprove intercourse there must be cogent facts and circumstances : *Head v. Head* 1 Sim. & S. 150 ; *Patterson v. Gaines* 6 How. 550 ; in *Stegall v. Stegall* Chief Justice Marshall held that whilst it was not necessary to make out that connection was not possible, it was proper that the evidence should establish its non-occurrence beyond all reasonable doubt (2 Brock. 256) ; and the Supreme Court of Massachusetts applied the same rule in *Sullivan v. Kelly* 3 Allen 148. See also *Phillips v. Allen* 2 Allen 453 ; *Hemmenway v. Towner* supra. ; *Cross v. Cross* 3 Paige 139.

Here, as already noticed, there was neither proof of inability nor of the certain want of opportunity, or even the faintest approach to a denial of the fact, and the child was born only eight months after the alleged violence. The circumstances permitted the assignment of the paternity of the child to the plaintiff without any infringement of the statements sworn to, and the court should have told the jury, as I think, that there was no legal evidence that the plaintiff was not father of the child, and that it was their duty to consider that he was. Some other matters have been referred to, but as the hearing has been *ex parte*, no one having appeared to support the judgment, it is deemed best to dispose of the case without going further.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.