PEOPLE *v.* CASE.

1. BASTARDS—LEGITIMACY—HUSBAND AND WIFE.
   A child born in lawful wedlock will be presumed to be legitimate.[1]

2. SAME—EVIDENCE—PRESUMPTIONS.
   The presumption is very strong and may be overcome only upon convincing proof; and the testimony of husband and wife as to nonaccess is incompetent.

3. SAME—ADULTERY—BURDEN OF PROOF.
   Evidence of adultery committed by the wife at or about the commencement of the period of gestation is insufficient to overcome the presumption.

4. SAME—EVIDENCE.
   Evidence that the husband of complaining witness in bastardy proceedings was in jail until 253 days before the birth of a child, that the wife committed adultery with respondent about 268 days before birth, that the minimum period of gestation is 240 days, the average 273 days, and the maximum 300 days, is not sufficient in the face of the presumption that the husband had access to his wife during the first thirteen days after he was liberated, to warrant a verdict of guilty.[2]

Certiorari to Ionia; Davis, J. Submitted June 13, 1912. (Docket No. 129.) Decided July 11, 1912.

Fred Case was found by the verdict of a jury to be the father of an alleged illegitimate child. Reversed and respondent discharged.

*Alfred R. Locke,* Prosecuting Attorney, for the people.

*James Scully,* for respondent.

[1]As to presumption of legitimacy of child born in wedlock, see note in 10 L. R. A. 662.

[2]Admissibility of declaration by, or testimony of, husband or wife as to nonaccess of husband, see notes in 2 L. R. A. (N. S.) 619, 14 L. R. A. (N. S.) 544.

BIRD, J.   As a result of certain statutory proceedings had in the Ionia circuit court, the respondent was adjudged to be the father of the bastard child of one Nancy Osborn.   The proceedings were instituted at the suggestion of the supervisor of the township of Boston, in which township complainant resided, on the theory that, if the child should live, it would be a charge upon the public.

Nancy Osborn was, at the time of making the complaint, a married woman 38 years of age and the mother of six children.   It was her claim that she was begotten with child by respondent on the 30th day of September, 1910, while she was engaged as a domestic in the home of respondent's father.   At this time her husband, Harry Osborn, was serving a term in the county jail for a failure to support her and the children.   The respondent denies the paternity of the child, and insists that the trial court was in error in admitting the testimony of Nancy Osborn and in submitting the case to the jury, as there was no competent testimony upon which they could find that he was the father of the child.

Nancy Osborn testified, in substance, that on the night of September 30, 1910, respondent had sexual intercourse with her; that she was just getting over her monthly period; and that it did not occur again until after the child was born, which occurrence took place 268 days thereafter, on June 25, 1911.   It was also shown that Harry Osborn served a term in jail commencing on August 11 and ending on October 15, 1910, and that after he was released he worked at Stafford's in Ionia and boarded at the American House.   The proprietor testified that there were days when he was not there, but he had no record of the dates when he was away.

It was shown by medical experts that the maximum period of gestation is 300 days, and the minimum 240 days, and the average 273 days.   If the husband was released from jail on October 15th, he had his liberty 253 days before the birth of the child.   Counting the minimum period of gestation as 240 days, it would leave 13

days in which, according to the laws of nature, he could have been the father of the child. The record is silent as to whether he saw and had access to his wife during that period.

The rule that a child born in lawful wedlock will be presumed to be legitimate is as old as the common law. It is one of the strongest presumptions in the law. The ancient rule made the presumption conclusive, if the husband was within the four seas. The modern one permits the presumption to be overcome, but only upon proof which is very convincing. The presumption cannot be overcome by testimony of either the husband or wife that sexual intercourse did not take place between them during the period when such child must have been begotten. *Smith* v. *Henline*, 174 Ill. 184 (51 N. E. 227); *Wallace* v. *Wallace*, 137 Iowa, 37 (114 N. W. 527, 14 L. R. A. [N. S.] 544, 126 Am. St. Rep. 253, 15 Am. & Eng. Ann. Cas. 761); *Bowman* v. *Little*, 101 Md. 273 (61 Atl. 223, 657, 1084); *Canaan* v. *Avery*, 72 N. H. 591 (58 Atl. 509); *Egbert* v. *Greenwalt*, 44 Mich. 245 (6 N. W. 654, 38 Am. Rep. 260).

The law with reference to the questions here involved is well stated by Mr. Justice Orton in *Mink* v. *State*, 60 Wis. 583 (19 N. W. 445, 50 Am. Rep. 386):

" The law is well settled that the wife, on the question of the legitimacy of her children, is incompetent to give evidence of the nonaccess of her husband during the time in which they must have been begotten. This rule is founded on the very highest grounds of public policy, decency, and morality. The presumption of the law is in such a case that the husband had access to the wife, and this presumption must be overcome by the clearest evidence that it was impossible for him, by reason of impotency or imbecility, or entire absence from the place where the wife was during such time, to have had access to the wife, or to be the father of the child. Testimony of the wife even tending to show such fact, or of any fact from which such nonacess could be inferred, or of any collateral fact connected with this main fact, is to be most

scrupulously kept out of the case, and such nonaccess and illegitimacy must be clearly proved by other testimony."

It has also been held that the presumption of legitimacy of a child born in lawful wedlock is so strong that it cannot be overcome by admissions by the wife of her adultery while cohabiting with her husband. *Grant* v. *Mitchell*, 83 Me. 23 (21 Atl. 178); *Hemmenway* v. *Towner*, 1 Allen (Mass.), 209; *Scanlon* v. *Walshe*, 81 Md. 118 (31 Atl. 498, 48 Am. St. Rep. 488). And evidence of the adultery of the wife at or about the commencement of the period of gestation is not sufficient to overcome the presumption. *Van Aernam* v. *Van Aernam*, 1 Barb. Ch. (N. Y.) 375; *Cross* v. *Cross*, 3 Paige (N. Y.), 139 (23 Am. Dec. 778).

The record does not disclose whether Harry Osborn saw and had access to his wife during the period of 13 days in which he might have become the father of the child. In the absence of any proof on the subject, the law will presume that he did have such access (1 Jones on Evidence, § 93) and that he is the father of the child. This presumption, as we have seen, is not rebutted by the fact that she had intercourse with another, because that does not prove nonaccess by the husband. The testimony of Nancy Osborn that she had connection with the respondent is upon authority admissible. 1 Jones on Evidence, § 97. But whatever force it may have in showing that the respondent is the father of the child is outweighed in this case by the presumption of legitimacy. We are of the opinion that there was not sufficient testimony tending to rebut the presumption of legitimacy to make a question of fact for the jury.

The finding of the trial court will be reversed, and the respondent discharged.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, and STONE, JJ., concurred. BLAIR and OSTRANDER, JJ., did not sit.