Tracey E. Harper died on the 27th day of December, 1933, intestate. He had never been married. On petition therefor, the probate court of the county of Berrien determined that his brother, John F. Harper, and his niece, Viola Binger, were his legal heirs and entitled to inherit his estate, and, by an order duly entered, appointed Harold Myers administrator thereof. Ella May Cuthbert, claiming to be his daughter and entitled to inherit, appealed from these orders to the circuit court. She is hereafter spoken of as the plaintiff and the administrator, brother and niece as the defendants. *Page 478 
On trial of the appeals, which had been consolidated by stipulation, in the circuit court, the jury answered special questions finding that the plaintiff was the legitimate daughter of the deceased, but, before the entry of a judgment, a new trial was granted on motion of the defendants.
On the second trial the record discloses that Nancy Ahere, an unmarried woman, gave birth to the plaintiff, whose married name now is Ella May Cuthbert, on January 26, 1889, at her home near Berrien Springs in the county of Berrien. Harper was arrested on the charge of bastardy. It is the claim of the plaintiff that a few days after her birth a meeting was held in the office of the then judge of probate of the county, since deceased, at which Harper and John Ahere, an uncle of the plaintiff, and Alonzo W. Pangborne were present, at which Harper acknowledged in writing that the plaintiff was his child and agreed to pay certain moneys for her maintenance until such time as she was able to take care of herself, and that his acknowledgment that it was his free act and deed was certified on the bottom thereof by the judge of probate. Pangborne so testified, and also that the judge prepared three copies of the writing; that he took the three copies to the home of Nancy Ahere and she signed them, and that he brought them back to the probate office and they were there signed and acknowledged by Harper and witnessed by himself and John Ahere and one copy given to Harper, one to Ahere and one kept by the probate judge, who said that he would record the same. A careful search of the records of the probate court failed to disclose any record of such an instrument.
Harold Myers, the administrator, testified that prior to the first trial he had made a careful search *Page 479 
among the papers of the deceased and could find no such paper as plaintiff relied upon, but that after the close of that trial he again made search and found a paper under the carpeting on the floor of the safe, which he produced in court. It stated that in consideration of $425, paid to them, the signers thereof, Nancy Ahere, Maria Ahere and John Ahere, jointly and severally agreed to take care of and support the female child lately born to Nancy Ahere and to release and discharge Tracey E. Harper from any liability therefor. It was also stated therein that Nancy Ahere forever released and discharged Harper from any and all liability to her by reason of any personal action she might have against him in her own right in said matter. This writing was submitted in evidence on the second trial. It was dated February 22, 1889, was witnessed by James Ahere, since deceased, and A.W. Pangborne, and is conceded to be in the handwriting of the then judge of probate. Both Pangborne and John Ahere admitted their signatures to the instrument and, while claiming that but one writing was signed in the probate office, Pangborne insisted that he was certain that the one he had testified to was actually executed by Harper.
The jury, in answer to special questions, again found in plaintiff's favor, but the trial court, on motion of defendants' counsel, which had been reserved, entered a judgment affirming that entered in the probate court, from which the plaintiff has taken this appeal.
The plaintiff bases her claim of heirship upon 3 Comp. Laws 1929, § 13443, which reads as follows:
"When, after the birth of an illegitimate child, his parents shall intermarry, or without such marriage, if the father shall, by writing under his hand, *Page 480 
acknowledge such child as his child, such child shall be considered legitimate for all intents and purposes: Provided, That such acknowledgment shall be executed and acknowledged in the same manner as may be by law provided for the execution and acknowledgment of deeds of real estate, and be recorded in the office of the judge of probate of the county in which such father is at the time a resident."
This section, when first enacted (Rev. Stat. 1846, chap. 67, § 4), read:
"When, after the birth of an illegitimate child, his parents shall intermarry, and his father shall, after the marriage, acknowledge him as his child, such child shall be considered as legitimate to all intents and purposes."
It was amended to read as above by Act No. 55, Pub. Acts 1881. The purpose of the amendment is apparent. Under it the father of a child, without intermarrying with the mother, might legitimatize the child by complying with its provisions.
The effect of this section was to abrogate the rule of the common law under which a person not born in lawful wedlock could not inherit as an heir. It does not provide for adoption, but for an acknowledgment by the father that the child is his own and thereby shall be considered legitimate. The evidence submitted by the plaintiff tends to show that the deceased, in a writing signed by him, made such an acknowledgment, and were it not for the use of the word "provided" and the language which follows there would be force in the argument of counsel that a question for the jury was presented.
The effect of such a proviso is considered at some length in 59 C. J. p. 1087, and in 25 R. C. L. p. 984. Many cases are cited in the footnotes thereto. The *Page 481 
authorities seem uniform that where the word "provided" is used in such a statute it creates a condition precedent; it requires a certain performance before the enactment which it follows shall become operative. And, as stated in John B. Ellison Sons v. Weintrob (C.C.A.), 272 Fed. 466:
"One who claims the benefit of a statute must see that the conditions precedent to awarding the benefit have been complied with."
It seems apparent that the purpose of the legislature in adding this proviso to the section was not only to require a written acknowledgment of parentage on the part of the father, but also its record in the office of the judge of probate of the county in which the father was then a resident. The wisdom of its enactment is well illustrated by the facts here presented. That a writing was executed in the office of the judge of probate after the birth of the plaintiff is clearly established. It also clearly appears that the deceased had not, during his lifetime, in any way recognized the plaintiff as his daughter. To prevent the execution of a writing which should establish the legitimacy of a child from being proven by the testimony of witnesses 45 years thereafter, the legislature provided that it must be recorded in the office of the judge of probate, the official before whom it would necessarily be submitted to establish heirship.
The judgment appealed from is affirmed.
POTTER, C.J., and NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred. *Page 482