GILE *v.* HUDNUTT.

1. DEATH—SURVIVAL AND DEATH ACTS—GREAT WEIGHT OF EVIDENCE.
   In action brought under both survival and death acts for death of 12-year old girl, hit by defendant's car as she walked along city street on a winter evening, verdict for plaintiff for $300 damages solely under the death act *held*, not against great weight of evidence where it was shown decedent's neck was broken and skull fractured, that she had no pulse and practically no bleeding (3 Comp. Laws 1929, §§ 14040–14062).

2. CONSTITUTIONAL LAW—EVIDENCE.
   While no person has a vested right in a rule of evidence, change of a rule of such a nature as substantially to deprive a party

of the right to present his side of a case and thus deny due process is not permissible.

3. SAME—ENTRIES MADE IN REGULAR COURSE OF BUSINESS.

Statute authorizing admission in evidence of any writing or record, in the form of an entry in a book, made as a memorandum of an act, transaction, occurrence or event, if made in the regular course of business and it was the regular course of business to make such entry and that lack of such entry should be evidence that no such act did take place, *held,* not unconstitutional as a denial of due process (Act No. 15, Pub. Acts 1935, amending 3 Comp. Laws 1929, § 14207).

4. EVIDENCE—HOSPITAL RECORDS—EXCLUSION IN DEATH ACTION.

Exclusion of hospital records relative to admission of plaintiff's decedent who had been fatally injured if not instantly killed by an automobile *held,* error, where introduction was sought by plaintiff in action brought under both survival and death acts (3 Comp. Laws 1929, §§ 14040–14062, Act No. 15, Pub. Acts 1935, amending § 14207).

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE—HOSPITAL RECORDS —EVIDENCE.

Claim that no proper foundation was laid in death action to show that hospital records relative to admission of decedent in hospital were proper and that the entries were made in such a manner as to permit the introduction of the record *held,* not reviewable where not made in trial court (3 Comp. Laws 1929, §§ 14040–14062, Act No. 15, Pub. Acts 1935, amending § 14207).

6. SAME—EXCLUSION OF HOSPITAL RECORDS—TESTIMONY OF MAKER.

Exclusion of hospital records from evidence in death action *held,* not prejudicial error, where nurse who made them testified in corroboration thereof and her testimony, given about six months after accident, was stronger in appellant's favor than the excluded records (3 Comp. Laws 1929, §§ 14040–14062, Act No. 15, Pub. Acts 1935, amending § 14207).

Appeal from Allegan; Miles (Fred T.), J. Submitted January 19, 1937. (Docket No. 51, Calendar No. 39,178.) Decided April 16, 1937.

Case by Effie M. Gile, administratrix of the estate of Thelma Louise Gile, deceased, against Orrien D.

Hudnutt for damages under the death and survival acts. From verdict and judgment for plaintiff under the death act, she appeals. Affirmed.

*Leo W. Hoffman,* for plaintiff.

*Dwight Fistler (Alexander, McCaslin & Cholette,* of counsel), for defendant.

Butzel, J. Plaintiff's decedent, a girl 12 years of age, while walking in a westerly direction on Allegan street in Plainwell, Michigan, on the evening of January 23, 1936, was fatally injured when struck by a car driven by defendant. The latter claims that at the time of the accident his vision was obscured by a cloud of snow thrown up by a swiftly moving car that passed him. Plaintiff declared under both the death (3 Comp. Laws 1929, §§ 14061, 14062) and survival (3 Comp. Laws 1929, §§ 14040–14060) acts, but the jury awarded $300 damages solely under the death act. Plaintiff has appealed. The sole question of fact in the case is whether decedent died instantly or survived for a short period. Appellant claims that the verdict was against the great weight of the evidence and that there was prejudicial error because of the court's refusal to admit certain hospital records offered in evidence.

The verdict was not against the great weight of the evidence. Defendant, a physician of long experience, testified that he stopped his car immediately after the accident, picked up the child, found she was no longer breathing; that she had completely relaxed, showed no signs of any circulation, made no sounds, had dilated pupils and there was no bleeding except a few drops of blood in the nose. The child was immediately taken to the hospital in

another car and was held all the way by Dale Hayes, a gas station attendant. The latter testified she was limp, gave no signs of breathing, made no movements or sounds, that he noticed some blood under the nose or mouth and that it was coagulated and stuck to the skin. The coroner, who was also a physician, examined the body the same evening and testified that the neck was broken, and there was a fracture at the base of the skull such as would cause instant death, but that if the pulse was still felt when decedent was brought to be hospital, death would not yet have ensued.

The child was admitted to the hospital at 7:50 p. m. by a nurse who took charge and made out certain charts or records. The nurse called up a doctor immediately after decedent was brought in. Three charts or records were offered in evidence. The clinical record was the most informative and together with an admittance chart was offered in evidence but excluded after being identified. The nurse, however, while on the stand, was permitted to see the charts to refresh her recollection. The trial took place less than six months after the accident. All the charts were in printed form and contained blank spaces for appropriate insertions. The clinical chart showed under the heading "Remarks" that the patient arrived at the hospital at 7:50; that she was "Admitted to the hospital, carried in. Bleeding from Mouth, Pulse very weak. Color cyanotic," and the further statement at 8:00: "Drs. Vaughan and Hudnutt here. No pulse. Respiration ceased." The chart also stated under the heading "Medicine" "Caffeine Amp. 1." The admittance chart showed: "Admitted 7:50 p. m. Discharged 8:00 p. m. Exp."

When plaintiff sought to introduce the records, defendant's attorney objected on the ground that they were immaterial and irrelevant; that the records could only be used to establish "dates or something of that kind," and that the nurse who made the entries in the records was present and that her testimony was the best evidence. The court sustained the objection and subsequently refused to admit the records as well as an additional one signed by the doctor which stated: "Patient dead 10 minutes after entrance." It is admitted that the child was dead at 8 p. m. when the doctor arrived.

In discussing the admissibility of the hospital records at the trial, no mention whatsoever was made of Act No. 15, Pub. Acts 1935. On appeal, plaintiff claims that the records should have been admitted under Act No. 15, while defendant claims that the act would be unconstitutional if it were applicable to the facts in the present case. Inasmuch as the constitutionality of the act is assailed and in view of the importance of the question, we shall discuss it. Appellee calls our attention to *Bielecki* v. *United Trucking Service*, 247 Mich. 661, where we held that a court could not be deprived of a judicial power to direct a verdict, in the case of contributory negligence, by an attempted legislative mandate. Again in *People* v. *Licavoli*, 264 Mich. 643, we held that a statute violated due process when it attempted to establish the guilt of a respondent through reputation alone. The constitutionality of Act No. 15 cannot be attacked on similar grounds.

In the cases of *Metropolitan Life Insurance Co.* v. *Dabudka*, 232 Mich. 36, and *Job* v. *Railway Co.*, 245 Mich. 353, we held under the facts presented that hospital records could not be admitted in the ab-

sence of enabling statutes. There was a demand to widen the scope of 3 Comp. Laws 1929, § 14207, which extended the common-law shop book rule by providing that books of account containing charges for money paid, furnished or lent should be admitted in evidence on the same basis and to the same extent as books of account containing charges for goods, wares or merchandise. Act No. 15, § 53, Pub. Acts 1935, is as follows:

"Any writing or record whether in the form of an entry in a book or otherwise, made as a memorandum of any act, transaction, occurrence or event shall be admissible in evidence in all trials, hearings and proceedings in any cause or suit in any court, or before any officer, arbitrators, or referees, in proof of said act, transaction, occurrence or event if it was made in the regular course of any business and it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record including lack of personal knowledge by the entrant or maker, may be shown to affect its weight but not its admissibility. The term 'business' shall include business, profession, occupation and calling of every kind. The lack of an entry regarding any act, transaction, occurrence or event in any writing of record so proved may be received as evidence that no such act, transaction, occurrence or event did, in fact, take place. Any photostatic or photographic reproduction of any such writing or record shall be admissible in evidence in any such trial, hearing or proceeding by order of the court, made within its discretion, upon motion with notice of not less than four days. All circumstances of the making of such photostatic or photographic reproduction may be

shown upon such trial, hearing or proceeding to affect the weight but not the admissibility of such evidence.''

The act simply enlarges a rule of evidence and follows the model acts adopted in Maryland, New York and Rhode Island. The act not only provides for books or records kept in commerce, but also in occupations and professions. A full discussion of the act may be found in 14 Michigan State Bar Journal, p. 35. The object of the statute is well stated as follows in *Johnson* v. *Lutz*, 253 N. Y. 124 (170 N. E. 517):

''Under modern conditions the limitations upon the right to use books of account, memoranda or records made in the regular course of business, often resulted in a denial of justice, and usually in annoyance, expense and waste of time and energy. A rule of evidence that was practical a century ago had become obsolete. The situation was appreciated and attention was called to it by the courts and text-writers. (Woods, Practice Evidence (2d Ed.), 377; 3 Wigmore on Evidence (2d Ed.), § 1530).

''The report of the Legal Research Committee of the Commonwealth Fund, published in 1927, by the Yale University Press under the title 'The Law of Evidence—Some Proposals for Its Reform,' dealt with the question of chapter 5 under the heading 'Proof of Business Transactions to Harmonize with Current Business Practice.' That report, based upon extensive research, pointed out the confusion existing in decisions in different jurisdictions. It explained and illustrated the great need of a more practical, workable and uniform rule, adapted to modern business conditions and practices. The chapter is devoted to a discussion of the pressing need of a rule of evidence which would 'give evidential credit to the books upon which the mercantile and industrial world relies in the con-

duct of business.' At the close of the chapter the committee proposed a statute to be enacted in all jurisdictions. In compliance with such proposal the legislature enacted section 374-a of the civil practice act in the very words used by the committee.

"It is apparent that the legislature enacted section 374-a to carry out the purpose announced in the report of the committee. That purpose was to secure the enactment of a statute which would afford a more workable rule of evidence in the proof of business transactions under existing business conditions."

No person has a vested right in a rule of evidence. *Maki* v. *Mohawk Mining Co.,* 176 Mich. 497. This rule does not, however, permit a change of such a nature as substantially to deprive a party of the right to present his side of a case and thus deny due process.

In *Board of Commissioners of Excise of the City of Auburn* v. *Merchant,* 103 N. Y. 143 (8 N. E. 484, 57 Am. Rep. 705), the court stated the test applicable to statutes affecting rules of evidence as follows:

"The general power of the legislature to prescribe rules of evidence and methods of proof is undoubted. While the power has its constitutional limitations, it is not easy to define precisely what they are. A law which would practically shut out the evidence of a party, and thus deny him the opportunity for a trial, would substantially deprive him of due process of law."

In *West* v. *Louisiana,* 194 U. S. 258 (24 Sup. Ct. 650), in upholding a decision of the supreme court of Louisiana * that when a deposition of a witness was taken in the presence of the accused and he had

---

* *State* v. *Kline,* 109 La. 603 (33 South. 618).—REPORTER.

the opportunity of cross-examination, it was admissible at the trial, if the witness was absent from the State at the time of the trial, the court said:

"Coming to a decision of the question before us, we are of the opinion that no Federal right of the plaintiff in error was violated by admitting this deposition in evidence. Its admission was but a slight extension of the rule of common law, even as contended for by counsel. The extension is not of such a fundamental character as to deprive the accused of due process of law. It is neither so unreasonable nor improper as to substantially affect the rights of an accused party, or to fundamentally impair those general rights which are secured to him by the 14th amendment."

To like effect see *Shamlian* v. *Equitable Accident Co.,* 226 Mass. 67 (115 N. E. 46); *Foster* v. *Gray,* 22 Pa. 9; *State* v. *Beach,* 147 Ind. 74 (43 N. E. 949, 46 N. E. 145, 36 L. R. A. 179); *Finch, Van Slyck & McConville* v. *Vanasek,* 132 Minn. 9 (155 N. W. 754); *State, ex rel. Hurwitz,* v. *North,* 304 Mo. 607 (264 S. W. 678), affirmed in 271 U. S. 40 (46 Sup. Ct. 384). We do not find the instant statute offensive under the due process clause.

Cases arising in other jurisdictions under substantially similar legislation indicate the possible scope of the statute. In *Gelderman* v. *Munson Steamship Line,* 232 App. Div. 776 (249 N. Y. Supp. 920), the admission of the ship's log was upheld under section 374-a of the Civil Practice Act of New York (which is analogous to our statute). In *Gelbin* v. *Railroad Co.* (C. C. A.), 62 Fed. (2d) 500, the report of an engineer of the State highway department relating to the repair of railroad crossing signs was held admissible under the statute.

In *Palmer* v. *John Hancock Mutual Life Ins. Co.,* 150 Misc. 669 (270 N. Y. Supp. 10), a hospital record under section 374-a of the civil practice act was held admissible to show the date of entry and discharge and the fact that deceased was treated, but was incompetent to prove diagnosis which was privileged under section 352 of the civil practice act. The question of privilege under 3 Comp. Laws 1929, § 14216, does not arise in the instant case as the records were offered by plaintiff.

As will be seen, the act contains its own limitations. It limits the admissibility of such records to any act, transaction, occurrence or event made in the regular course of any business where it was the regular course of such business to make such record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. We withhold discussion of specific questions which may arise but are not presented to us in the instant case.

We hold that the hospital records in the instant case came within the purview of the act and it was error on the part of the trial court to exclude them. Appellee claims that no proper foundation was laid to show that the records were proper and that the entries were made in such a manner as to permit the introduction of the record. No objection was made on that account in the trial court and we need not discuss the claim.

Appellee, however, claims that even if the exclusion of the records was improper, it resulted in no prejudicial error. The nurse who wrote up the clinical report and the admittance record had sole charge of the case. Her testimony as a witness was stronger in plaintiff's favor than the records. The jury must have seen that she consulted the records.

While the clinical record stated that the pulse was very weak, the nurse testified that she felt the pulse and that she was sure it was there and that she made a notation to the effect—that the pulse was weak. She further testified that there was some bleeding from the nose and mouth. On cross-examination, when asked what she exactly meant, she admitted that bleeding from the mouth could either mean running blood or coagulated blood. This tended to show that the record itself was not unequivocal. She possibly weakened the statement of the record in this regard, but brought out the facts. She, however, strengthened the statement in the record that the color of the patient was cyanotic by explaining that decedent "turned blue after she came in." In view of the fact that the nurse was sworn and stated everything that the record showed with greater detail and that she was permitted to examine the records in the presence of the jury and was fully examined in regard to the data disclosed by the records, we cannot say that there was any prejudicial error. The appellant had in evidence the benefit of the nurse's statement that the child was alive, which was the ultimate fact to be proved. The operative record was signed by Dr. Vaughan who was not called as a witness by either side. It stated that death was due to basal fracture of the skull and that the patient was dead 10 minutes after entrance. Dr. Vaughan did not see the patient until 8:00 p. m. and the testimony of the nurse destroys any probative value that might be gleaned from the chart as to whether the doctor saw the patient before 8:00 p. m. Plaintiff was not prejudiced through the exclusion of the records. *Ribas* v. *Revere Rubber Co.,* 37 R. I, 189, 198 (91 Atl. 58), relied upon by appel-

lant, is clearly distinguishable. In that case a majority of the court said (two justices dissenting):

"The exclusion of the record deprived the defendant of its force as corroborative of the testimony of other witnesses, the record having been made long prior to the suit and without any reference to plaintiff's claim."

It appeared that the person who made the record did not testify and that the records were not even used for the purpose of refreshing the memory of any of the other witnesses. In addition, the record, unlike the instant case, had been made long prior to the suit.

The differentiation between the damages recoverable under the death act and the survival act in Michigan has been frequently commented upon. Dissatisfaction with the verdict of the jury is bound to arise, but in the instant case, the verdict is supported by the evidence.

The judgment is affirmed, with costs to defendant.

Fead, C. J., and North, Wiest, Bushnell, Sharpe, Potter, and Chandler, JJ., concurred.