SERAFIN v SERAFIN

OPINION OF THE COURT

1. DIVORCE—CHILD SUPPORT—BASTARDS—LORD MANSFIELD'S RULE—
   CONSTITUTIONAL LAW—DUE PROCESS.

   In a suit for divorce by a plaintiff husband who denied paternity
   of a child, the application of Lord Mansfield's rule, which
   provides that neither husband nor wife will be permitted to
   bastardize the issue of the wife after marriage by testifying to
   the nonaccess of the husband, unconstitutionally takes property
   from the plaintiff without due process of law where application
   of the rule prevents plaintiff from introducing his own evidence
   and makes the presumption of legitimacy an irrebuttable pre-
   sumption.

2. STATUTES—PRESUMPTIONS—ARBITRARINESS—CONSTITUTIONAL LAW
   —DUE PROCESS.

   A statute creating a presumption that is arbitrary or that oper-
   ates to deny a fair opportunity to repel it violates the due
   process clause of the Fourteenth Amendment.

3. DESCENT AND DISTRIBUTION—BASTARDS—INHERITANCE—STATUTES.

   The common law rule preventing inheritance by an illegitimate
   child from his or her mother has been abrogated by statute
   (MCLA 702.81; MSA 27.3178[151]).

4. BASTARDS—LEGITIMATION OF CHILD—DESCENT AND DISTRIBUTION—
   STATUTORY INHERITANCE—STATUTES.

   An illegitimate child may be legitimized by his or her father and
   may share statutory inheritance equally (MCLA 722.717; MSA
   25.497).

REFERENCES FOR POINTS IN HEADNOTES
[1] 10 Am Jur 2d, Bastards § 30.
[2] 16 Am Jur 2d, Constitutional Law §§ 542, 544.
[3, 4, 7] 10 Am Jur 2d, Bastards §§ 45–59.
[5] 10 Am Jur 2d, Bastards §§ 67–73.
[6, 8] 5 Am Jur 2d, Appeal and Error §§ 691–701.

5. BASTARDS—SUPPORT—PATERNITY ACT—STATUTES.

An illegitimate child may be granted support from his or her father under the paternity act (MCLA 722.711 *et seq.; MSA* 25.491 *et seq.).*

DISSENT BY DANHOF, P. J.

6. APPEAL AND ERROR—BASTARDS—EVIDENCE—LORD MANSFIELD'S RULE—COURTS—CASE PRECEDENT.

*Controlling precedent of the Michigan Supreme Court precludes alteration of Lord Mansfield's rule by the Court of Appeals.*

7. EVIDENCE—BASTARDS—LORD MANSFIELD'S RULE—LEGITIMATION OF CHILD—CONSTITUTIONAL LAW—RATIONALITY TEST.

*The hinderance that Lord Mansfield's rule places before a husband, who seeks to prove he is not the father of a child, is not so great, nor are the interests of decency, policy and morality arguably served by the rule so insignificant, that the test of mere rationality is not met by adherence to Lord Mansfield's rule.*

8. APPEAL AND ERROR—FAILURE TO BRIEF—ISSUE ABANDONMENT.

*Failure to brief an issue constitutes an abandonment of that issue on appeal.*

Appeal from Wayne, Charles Kaufman, J. Submitted November 10, 1975, at Detroit. (Docket No. 23915.) Decided February 26, 1976. Leave to appeal applied for.

Complaint by Donald Serafin against Gloria Jean Serafin for divorce. Judgment of divorce granted. Plaintiff appeals from that portion of the judgment which ordered him to pay child support. Reversed and remanded.

*Milmet, Vecchio, Kennedy & Carnago, P. C.* (by *Richard F. Fellrath),* for plaintiff.

*James Thomson,* for defendant.

Before: DANHOF, P. J., and McGREGOR and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Plaintiff, Donald Serafin, appeals a judgment rendered by the Wayne County Circuit Court in a divorce action which he filed against defendant, Gloria Serafin. Plaintiff filed the complaint on August 6, 1973 and alleged a breakdown of the marriage relationship. Plaintiff alleged that the parties had separated and ceased cohabitation on or about August 1, 1972. On August 30, 1973, plaintiff requested entry of a default judgment against defendant for failure to timely file an answer.

On April 5, 1974, however, plaintiff filed an amended complaint which contained the following clause:

"In the place instead of Paragraph 4, Plaintiff alleges as follows: that during the time the parties lived and cohabited together as husband and wife until the filing of this amended complaint there were no children born as a result of cohabitation by the parties hereto. However, Plaintiff is informed and variably believes that a child was born to defendant wife in October of 1973. Your Plaintiff denies filiation and paternity of said child based upon non-cohabitation and non-access."

Plaintiff requested the friend of the court to make a final report. This report was filed on August 22, 1974. The report noted the existence of one seven-month-old child named De Angela, born on October 24, 1973, who was living with defendant. The report further noted that defendant, in a sworn statement, had said that plaintiff was the father of this child, but that plaintiff denied paternity. The report also stated that, according to defendant Gloria, the date of separation was October, 1972; while according to plaintiff Donald, the date of separation was September 31, 1971 *[sic]*.

On September 12, 1974 defendant filed an an-

swer in which she alleged that the correct date of separation was January, 1973 and claimed that plaintiff fathered her child.. At a pretrial deposition, defendant refused to give any testimony concerning the birth of the child, and stated that she was unwilling to take a blood test. Plaintiff testified that he was married to defendant on July 10, 1971, and that the last time he had cohabited with her was when he came from his air force base to visit her in September, 1972. After this visit, plaintiff testified, he returned to his "base of residence", and he had not seen his wife since that time. Plaintiff testified that other than the month of September in 1972, one week in May when he "was home visiting", and one week in August when he "was here in court", he had been "stationed at Baudette Air Force Station in Minnesota" during the years 1972 and 1973 and "had not left there for any reason". Plaintiff testified that he also had a job at the NCO Club during this period which occupied most of his free time.

Plaintiff testified that during the months of December, 1972, and January of 1973 he was at his "duty station on base". Plaintiff also testified that he had "had no three-day passes or any other passes during the month of January, 1973". To his knowledge, plaintiff testified, there had been no children born of his marriage to defendant.

Defendant testified that she was married to plaintiff on July 10, 1971, and that she had separated from her husband in January of 1973. One child, De Angela Rene Serafin, was born of this marriage on October 24, 1973. Defendant testified that in January of 1973, she had gone to and stayed at International Falls, and plaintiff had driven from his base to see her. On cross-examination, defendant testified that this visit had taken place in the middle of January, 1973.

Defendant further testified that the only time she and plaintiff had had a reconciliation after October, 1972 was the three-day period around January 15, 1973, consisting of three days and two nights. All this time, defendant testified, she had stayed in the motel, except when she "walked to the dimestore and back". She claimed that she had at no time during this weekend gone to the Baudette Air Force base, and that plaintiff had come to see her "on his off-duty time, when he was not at his work".

On rebuttal, plaintiff again claimed that he had not seen defendant after September, 1972. Plaintiff sought to have the court order defendant to have a blood test, but the court denied plaintiff's motion. The court, in granting the divorce and requiring plaintiff to pay child support, stated:

*"The testimony of the parties, of course, can't be used to illegitimatize a child. The only testimony of the plaintiff is to the effect that he was on duty all the time.* The defendant doesn't deny that. Her testimony is that she was up there during a period of time that he could have fathered this child. It is within the period of gestation, being some nine months from January to October. Just about nine months. Actually, just slightly over. So I would have to find, based upon what is before the Court and the posture of the law at this time, that the plaintiff is the father and order that custody of the child be awarded to the defendant wife until the child attains the age of eighteen and that the plaintiff husband pay the sum of $21.00 a week plus medical, dental and hospital expenses until the child attains the age of majority and I will order reasonable visitation privileges to the plaintiff husband." (Emphasis supplied.)

From the emphasized portion, it appears that the trial court admitted into evidence plaintiff's testimony that he had not seen defendant after either

September or October, 1972 but did not consider this testimony in determining paternity. In so doing, the trial court relied on Lord Mansfield's rule which provides that:

"neither husband nor wife will be permitted, as a witness, to bastardize the issue of the wife after marriage by testifying to the nonaccess of the husband. *Egbert v Greenwalt,* 44 Mich 245 (38 Am Rep 260) [6 NW 654 (1880)]; *People v Case,* 171 Mich 282 [137 NW 55 (1912)]." *In re Wright's Estate,* 237 Mich 375, 379; 211 NW 746 (1927).[1]

It is the application of this rule which plaintiff assigns as error on appeal. As he did at trial, plaintiff contends that the rule's application violated the due process clauses of the United States and Michigan Constitutions. US Const, Am XIV, § 1, Const 1963, art 1, § 17. Defendant responds by citing a number of cases in which Michigan appellate courts have upheld Lord Mansfield's rule, some despite their recognition of its shortcomings.

We agree with plaintiff and hold that the application of Lord Mansfield's rule unconstitutionally took property from plaintiff without due process of law. We are not unmindful of those cases cited by defendant which upheld the rule challenged by plaintiff today. We find, however, that they did not consider a due process challenge to the rule. The most recent challenge to the rule considered by

---

[1] *Yanoff v Yanoff,* 237 Mich 383; 211 NW 735 (1927), a companion case to *In re Wright's Estate,* stated that Lord Mansfield's rule prohibits the husband or wife from testifying as to both *"access* or nonaccess of the husband, antenuptial or postnuptial". 237 Mich at 389. (Emphasis supplied.) We view this as a misstatement of the law. Neither prior or later Michigan cases nor cases from other jurisdictions prohibit testimony as to access. The rule's purpose, to legitimize children, would certainly not prevent testimony as to access. *See People v Bedell,* 342 Mich 398; 70 NW2d 808 (1955), *Maxwell v Maxwell,* 15 Mich App 607, 611, fn 7; 167 NW2d 114 (1969), *lv den* 381 Mich 815 (1969).

our Supreme Court was made in the companion cases of *In re Wright's Estate, supra,* and *Yanoff v Yanoff,* 237 Mich 383; 211 NW 735 (1927). In both cases, the rule was deemed "too well settled to be disturbed", *Id,* at 389, and upheld on public policy grounds. Similarly, this Court, in *Maxwell v Maxwell,* 15 Mich App 607; 167 NW2d 114 (1969), *lv den* 381 Mich 815 (1969), considered, and rejected, only policy challenges to the rule.

Recently, in *People v Wiseman,* 63 Mich App 137; 234 NW2d 429 (1975), this Court did consider due process objections. In *Wiseman,* defendant relied on *Stanley v Illinois,* 405 US 645; 92 S Ct 1208; 31 L Ed 2d 551 (1972), a case which struck down a statutory irrebuttable presumption. The *Wiseman* panel rejected this argument because the presumption of legitimacy is rebuttable. The Court noted:

"Lord Mansfield's rule does not prohibit all proof that plaintiff is not the father of the child, but only the testimony of him and his former wife as to nonaccess. Other evidence, such as testimony of third parties as to defendant's whereabouts or the results of blood tests, could be used by him to disprove paternity." *Id,* at 140.

Parenthetically, the *Wiseman* panel allowed its parties to circumvent Lord Mansfield's rule by stipulation. Although the panel held that testimony by either party as to non-access was inadmissible, it allowed the parties to stipulate to non-access.

We agree that *Stanley v Illinois, supra,* is not controlling. However, a rule of law need not exclude all evidence contrary to a presumption to be found constitutionally infirm. See *e.g., Chambers v Mississippi,* 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973), where the application of a hearsay rule

was found to violate due process notwithstanding the fact that defendant could have used other evidence to impeach certain testimony. See also *Gile v Hudnutt*, 279 Mich 358, 365; 272 NW 706 (1937), which noted that a rule of law preventing a party from introducing favorable evidence would deprive him of a fair and effective trial and would, thus, violate due process. It has long been the law that:

"A statute creating a presumption that is arbitrary or *that operates to deny a fair opportunity to repel it* violates the due process clause of the Fourteenth Amendment." *Manley v Georgia*, 279 US 1, 6; 49 S Ct 215; 73 L Ed 575 (1929). (Citation omitted.) (Emphasis supplied.)[2]

While we do not dispute the validity and rationality of the common law presumption of legitimacy, we find that the reasons supporting the application of Lord Mansfield's rule are not sufficient to overcome the tremendous hardship resulting from its application in the instant case. We must, thus, disagree with the *Wiseman* panel which concluded:

"The hinderance that the challenged rule of evidence places before plaintiff is not so great, nor are the interests of 'decency, policy and morality' arguably served by the rule so insignificant, that the test of mere rationality is not met by adherence to Lord Mansfield's rule." 63 Mich App at 140.

In the instant case, the hinderance caused by

[2] This theory has been frequently used in irrebuttable presumption cases. *See e.g., Heiner v Donnan*, 285 US 312; 52 S Ct 358; 76 L Ed 772 (1932), *Carrington v Rash*, 380 US 89; 85 S Ct 775; 13 L Ed 2d 675 (1965), *Vlandis v Kline*, 412 US 441; 93 S Ct 2230; 37 L Ed 2d 63 (1973).

the challenged rule is fatal. The most significant evidence available to plaintiff is his own testimony. Without it, he is absolutely vulnerable to evidence of access which he claims his wife concocted in the knowledge that her husband would be unable to rebut it. A blood test was not available and, if available, may not have proved conclusively that the plaintiff was not the father. Preventing a party from introducing his own evidence runs contrary to basic tenets of fundamental fairness, as does excluding evidence crucial to a disposition of the issue in controversy. The application of Lord Mansfield's rule made the presumption of legitimacy an irrebuttable presumption. We never intended it to be so, *Wechsler v Mroczkowski,* 351 Mich 483, 489; 88 NW2d 394 (1958), *Magarell v Magarell,* 327 Mich 372, 376; 41 NW2d 898 (1950).

The rationale for the rule is no longer cogent enough to justify these results. The rule was necessary at the time of its formulation because illegitimates could not become legitimized and were without legal rights. As the Superior Court of Pennsylvania recently noted in overturning the rule, *Commonwealth ex rel Savruk v Derby,* 344 A2d 624 (Pa Super, 1975), decisions of the United States Supreme Court have ameliorated much of the social stigma and legal disabilities. See *e.g., Jimenez v Weinberger,* 417 US 628; 94 S Ct 2496; 41 L Ed 2d 363 (1974) (social security disability benefits), *New Jersey Welfare Rights Organization v Cahill,* 411 US 619; 93 S Ct 1700; 36 L Ed 2d 543 (1973) (workmen's compensation benefits), *Gomez v Perez,* 409 US 535; 93 S Ct 872; 35 L Ed 2d 56 (1973) (right of support from biological father), *Weber v Aetna Casualty & Surety Co,* 406 US 164; 92 S Ct 1400; 31 L Ed 2d 768 (1972) (workmen's compensation benefits), *Stanley v Illinois,* 405 US

645; 92 S Ct 1208; 31 L Ed 2d 551 (1972) (right of father to custody), *Levy v Louisiana,* 391 US 68; 88 S Ct 1509; 20 L Ed 2d 436 (1968) (wrongful death benefits), *Glona v American Guarantee & Liability Insurance Co,* 391 US 73; 88 S Ct 1515; 20 L Ed 2d 441 (1968). But see *Labine v Vincent,* 401 US 532; 91 S Ct 1017; 28 L Ed 2d 288 (1971).

In Michigan, the common law rule preventing inheritance by an illegitimate from his or her mother has been abrogated by statute, MCLA 702.81; MSA 27.3178(151). An illegitimate child may be legitimized by his or her father and may share statutory inheritance equally, MCLA 722.717; MSA 25.497. *In re Harper's Estate,* 272 Mich 476; 262 NW 289 (1935). An illegitimate child may seek support from his or her father under the paternity act, 1956 PA 205, MCLA 722.711 *et seq.;* MSA 25.491 *et seq.*

It is feared that the rights of the child will not be adequately represented. The trial court, the presumption of legitimacy and the intervention of the state in this and subsequent proceedings all serve to represent such interests.

It would be foolish for any court to establish a hierarchy of values, to weigh the interests of litigants in due process and fundamental fairness against the interest of a child in his or her legitimacy. Fortunately, we do not have to do so. The strong presumption of legitimacy serves as a significant protection of the child in question. See *Maxwell v Maxwell, supra,* at 616–617. See generally *In re Wood Estate,* 374 Mich 278, 292–293; 132 NW2d 35 (1965). A great deal of evidence is required to overcome this presumption. The alleged father must be allowed to introduce his best evidence.

We note in conclusion what we perceive to be

the effect of our holding. Given the strength of the presumption of legitimacy, there will be little effect on the basic rule that parents will not be able to bastardize a child solely by their testimony, *King v Peninsular Portland Cement Co,* 216 Mich 335; 185 NW 858 (1921). We note further that our holding is limited to the facts of this case. We are not overturning Lord Mansfield's rule. Rather, we are rejecting its application where that application works injustice far beyond the purpose of the rule.

Any sweeping alteration, rejection or reaffirmation of the rule must come from the Legislature or the Supreme Court. We reaffirm the request for a new review expressed by this Court in *Maxwell v Maxwell, supra.* We reaffirm our concern over the shortcomings of the rule and over the plethora of difficulties inherent in matrimonial litigation.

Both before and after the advent of no-fault divorce, MCLA 552.6; MSA 25.86, the application of Lord Mansfield's rule has caused confusion and duplicity. These problems have been most troublesome in cases where husband and wife had separated many years prior to the divorce. Often in such cases, the wife had, in the interim, lived with other men who had fathered children by her. Before no-fault divorce, it was well established that a plaintiff in a suit for divorce had to come into court with clean hands. Courts were, thus, faced with a wife, living in adultery, suing for divorce. This would be clear on the face of the complaint. In her complaint, she would state that she and her husband had been living apart for many years and that several children had been born since she had last seen her husband. Wayne County's response to circumvent the clean hands problem was to have the friend of the court recommend that no order of custody or support be

entered, in the hope that the plaintiff wife would ultimately marry the biological father. This "code" would inform the trial court that the defendant husband was not the biological father of the children. Thus, despite the court's knowledge that the plaintiff was not legitimately in court, divorces would be granted.

No-fault divorce has vitiated this problem, but a more serious one remains. In thousands of cases, even though the biological father is living with the wife and children, he cannot be forced to support the children. The wife's legal husband, however, can be. This unfortunate situation is created by the interaction of the paternity act, 1956 PA 205, MCLA 722.711 *et seq.;* MSA 25.491 *et seq.,* the support act, 1966 PA 138, MCLA 552.451 *et seq.;* MSA 25.222(1) *et seq.,* and Lord Mansfield's rule. The paternity act provides support for illegitimate children only where they are born out of wedlock, *i.e.,* at a time when the mother is not legally married, MCLA 722.711; MSA 25.491. The support act uses the legal presumption of legitimacy to deem the legal husband the biological father and require him to support the children. The presumption plus Lord Mansfield's rule prevents the husbands from proving that his wife's children are not his, and prevents state agencies from collecting from the biological father.

Consequently, the husband stops paying support, the biological father can't be forced to pay, and the mother ends up on welfare or aid to dependent children. Where the biological father seeks to adopt the children, often the legal father cannot be found to give his consent. Similar problems occur in the areas of workers' compensation, unemployment compensation, social security and tax

deductions. We hope that the laws may soon be changed to comport with practical realities.

Reversed and remanded for proceedings consistent with this opinion. Costs to plaintiff.

McGREGOR, J., concurred.

DANHOF, P. J. *(dissenting).* I would affirm the trial court's application of Lord Mansfield's rule for the reasons set forth in *People v Wiseman,* 63 Mich App 137; 234 NW2d 429 (1975). Also in *Maxwell v Maxwell,* 15 Mich App 607, 618; 167 NW2d 114 (1969), *lv den,* 381 Mich 815 (1969), then Judge (now Justice) LEVIN discussed what is known as Lord Mansfield's rule in detail. He concluded that opinion as follows:

"However, if that is to become the law of this State, the Supreme Court must modify precedent which controlled the deliberations of the trial judge and which controls ours as well."

Hence, I must conclude that any such change as the majority wishes to accomplish should be made by the Supreme Court of this state.

The plaintiff also appeals the trial court's denial of his request at trial to order the defendant to take a blood test. The plaintiff cites no authority in support of such a request as made here, nor do I perceive of any. Having failed to brief this issue, I would consider it abandoned on appeal. *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959).

Therefore, I dissent from the majority opinion.