PEGGY GEORGE *v.* JACKIE GEORGE

5-4887                                    444 S. W. 2d 62

Opinion delivered August 25, 1969

*Hodges, Hodges & Hodges,* for appellant.

*Pickens, Pickens & Boyce;* By: *James A. McLarty,*
for appellee.

J. FRED JONES, Justice. This is an appeal by Peggy

George from a decree of the Jackson County Chancery Court holding that her former husband, Jackie George, is not the father of her child. This appeal questions the sufficiency of the evidence to overcome the presumption of the legitimacy of a child conceived during marriage but born after divorce.

Peggy and Jackie George were married on November 18, 1961, and separated on June 16, 1967. One child was born on July 13, 1962. Peggy was granted a divorce on September 7, 1967, on her complaint of indignities and the custody of the child was awarded to her. Jackie's countercomplaint of indignities was dismissed and Jackie was ordered to pay $75 per month for the support of the child.

On February 28, 1968, Jackie filed a petition for a modification of the original decree as to child support praying a reduction because of impending military service bringing about change in condition as to income. On March 12, Peggy filed a general denial and on May 24, 1968, she filed a response to the petition for modification denying that Jackie's income would be reduced by induction into the National Guard but would be enhanced. Also on May 24, Peggy filed a counterpetition for modification of the original decree alleging the birth of an additional child, subsequent to the date of the original decree, and praying for additional support for the two children. On June 12 Jackie filed an answer to the counterpetition and denied the paternity of the second child.

The chancellor found that there had not been such change in the condition of the parties as to justify a change in the original decree as to support money and the petitions of both parties for modification were denied. The chancellor further found and decreed that Jackie George was not the father of the second child. Peggy relies on the following point for reversal:

"The chancellor erred in finding that the child born

to appellant after the rendition of the decree was not the child of appellee in view of the testimony and current Arkansas case decisions.''

Both parties testified that they separated on June 16, 1967, and have not lived together or engaged in sexual intercourse with each other since that date. Jackie testified that he last had sexual relations with Peggy one or two weeks prior to their separation on June 16, and Peggy testified that they had sexual relations on June 15 or June 14 before they separated on June 16. The child, a girl, was born on March 29, 1968, and Peggy testified that the birth followed a full term pregnancy. The child weighed 5 pounds, 11 ounces at birth.

Jackie offered to submit to a blood test for use in evidence as to paternity and a blood test was ordered by the chancellor. Peggy objected to submitting the child to a blood test and none was carried out. Dr. Jabez F. Jackson was the obstetrician who attended Peggy during her pregnancy and at the child's birth and Jackie called Dr. Jackson as a witness. Peggy claimed the medical privilege as to Dr. Jackson's testimony by general objection. The general objection was overruled but specific objections to most of Dr. Jackson's testimony were sustained by the chancellor. Dr. Jackson was permitted to testify anyway ''for the record,'' the substance of his testimony being that he first saw Peggy on September 9, and that Peggy gave a history of having menstruated in July. The only pertinent testimony of Dr. Jackson to which objections were not sustained, is as follows:

"Q. And how was the birth brought about, Dr. Jackson?

A. Well, I induced it." 

Peggy testified that she had been seeing Dr. Jackson prior to the separation and she admitted a menstrual period of one day's duration after she suspected or knew that she was pregnant.

We conclude that the chancellor erred in decreeing that Jackie George is not the father of the child under the evidence in this case. There is no contention that Jackie and Peggy were not still married to each other on the date of conception, whether it occurred when Jackie testified he last had sexual relations with Peggy one or two weeks prior to June 16, 1967, or whether it occurred on the occasion as testified by Peggy, one or two days prior to June 16, 1967.

Certainly Peggy's attitude toward blood tests and her objections to Dr. Jackson's testimony do not add anything to the credibility of her testimony, but Jackie had the burden of proving his allegations that he is not the father of the child conceived during his marriage to Peggy, and the burden was not on Peggy to prove that the child was conceived through sexual relations with her husband.

There is no evidence in the record, including the original divorce proceedings, that Peggy was guilty or even accused of adultery, or of infidelity to her marriage vows. She testified that no one else except Jackie could have been the father of the child. The nearest thing to a suggestion of impropriety on Peggy's part was testimony at the original trial to the effect that Jackie, on one occasion, left the house with a gun and with threats against someone who had called on the telephone inquiring about the welfare of the older child who had been injured in an automobile wreck. There is no evidence in the record as to the significance of a one day menstrual period in the early months of pregnancy. Apparently the chancellor based his opinion primarily on the length of time between the last admitted sexual relations and the birth of the child. The appellee states in his brief as follows:

"Using the date of birth as beginning point and substracting 270 days, the normal period of gestation for humans, the date of June 27, 1967, is produced as the probable date of conception. *This is*

*some eleven days after the date of separation and is within a period in which it is undisputed that appellee was without access to the appellant.''* (Appellee's emphasis.)

There is no testimony in the record, medical or otherwise, as to the normal gestation period for humans, but in Blakiston's New Gould Medical Dictionary under "pregnancy" is found the following: "The duration of pregnancy in woman is approximately 280 days." There is no evidence in the record as to the acceptable deviation from normal.

The appellant argues that under Ark. Stat. Ann. § 61-104 (1947) providing that "the issue of all marriages deemed null in law, or dissolved by divorce, shall be deemed and considered legitimate," should settle the question here. The question here is not whether the issue of a marriage is legitimate, but the question is whether the child involved in this case is the issue of the marriage. We agree with the appellee that the statute does not apply to the situation in this case.

The appellant argues that we should follow the rule announced in bastardy proceedings (*Kennedy* v. *State,* 117 Ark. 113, 173 S. W. 842), and in descent and distribution cases (*Jacobs* v. *Jacobs,* 146 Ark. 45, 225 S. W. 22; *Morrison, Adm'x* v. *Nicks,* 211 Ark. 261, 200 S. W. 2d 100) as reiterated in *West* v. *King,* 222 Ark. 809, 262 S. W. 2d 897, that "there is a well recognized presumption that children born to a couple lawfully married are the children of the husband;" that this presumption "is one of the strongest presumptions known to the law and that it continues until overcome by the clearest evidence that the husband was impotent or without access to his wife," and the appellant argues that this presumption should apply to the time of conception, unaffected by subsequent divorce.

The appellee argues that this presumption has been weakened by the ravages of time and that the presump-

tion should be relaxed because of its age. The appellee urges us to re-examine our prior holdings, relax our previous rules as to the quantum and quality of evidence required to rebut the presumption of legitimacy, and he concludes as follows:

> "The appellee strongly urges that the allowance of blood test results and other relevant evidence, rather than only allowing evidence of the husband's impotency or non access, represents a far more enlightened position than does the old presumption. Here is a man who had not been with his former wife for more than nine months. He had gone through the ordeal of divorce and had never once been remiss in his obligation to his child. He had started a new life for himself by remarriage. To require this man to exonerate himself by using only evidence of impotency or non access is an unfair, if not impossible, requirement. A man, whose former wife gives birth after their divorce, should be able to rebut the presumption of legitimacy by any relevant evidence. The appellee urges that this court adopt such a rule by overruling its prior holding, in as much as they apply to the fact situation at bar. For these reasons, the Chancellor's decision should be upheld."

The appellee points to Ark. Stat. Ann. §§ 34-705.1—34-705.3 (Repl. 1962) as legislation indicating a public policy contrary to the presumption of legitimacy. This statute pertains to blood tests in paternity proceedings, is digested under the chapter on "Bastardy," and provides:

> "Whenever it shall be relevant to the prosecution or the defense in an illegitimacy action, the trial court may direct that the husband, wife and child submit to one [1] or more blood tests to determine whether or not the defendant can be excluded as being the father of the child. . ."*

---

*As to the conclusiveness of blood tests in cases of this nature see *Prochnow* v. *Prochnow*, 274 Wis. 491, 80 N. W. 2d 278.

We are not concerned in the case at bar with all the evidence that would rebut the presumption of legitimacy, we are only concerned with whether the evidence that was submitted at the trial in *this case* was sufficient to rebut the presumption of legitimacy, and we conclude that it was not.

Reversed.

