HUDE v VANNEST

1. Bastards—Paternity—Gestation Period—Legal Impossibilities
   —Matters of Law.

   The medically recognized possibility of a human pregnancy
   longer than 300 days is not, as a matter of law, a legal
   impossibility, therefore, it was error for a trial court to direct a
   verdict in a paternity action based upon the belief that it was
   established as a matter of law that a pregnancy longer than
   300 days is a legal impossibility.

2. Bastards—Paternity—Gestation Period—Legitimate Children
   —Illicit Relations—Extramarital Relations.

   Courts have recognized an extremely long period of gestation in
   order to find a child legitimate where there is no evidence of
   illicit or extramarital relations by the wife.

Appeal from Gladwin, Paul F. O'Connell, J.
Submitted March 2, 1977, at Grand Rapids.
(Docket No. 29039.) Decided May 4, 1977.

Complaint by Verna Hude against Mark Van-
nest for an order of filiation under the Paternity
Act. Directed verdict for defendant. Plaintiff ap-
peals. Reversed and remanded.

*Cyrus Y. At Lee,* Gladwin County Prosecuting
Attorney, for plaintiff.

*Kreckman and McCarthy,* for defendant.

References for Points in Headnotes
[1, 2] 10 Am Jur 2d, Bastards §§ 12, 23.
   Presumption of legitimacy, or of paternity, of child conceived or
   born before marriage. 57 ALR2d 729.
   Presumption of legitimacy of child born after annulment, divorce,
   or separation. 46 ALR3d 158.

Before: R. M. MAHER, P. J., and D. E. HOLBROOK, JR. and J. T. LETTS,* JJ.

R. M. MAHER, P. J. Plaintiff brought this action against defendant under the Paternity Act, MCLA 722.711 *et seq.;* MSA 25.491 *et seq.* At the close of plaintiff's proofs, the court directed a verdict for defendant. Plaintiff appeals.

Plaintiff presented the following testimony at trial. She was an unmarried woman on August 18, 1972, when she had intercourse with defendant on the ball field of the Gladwin County Fairgrounds. She remained unmarried on June 20, 1973, when she gave birth to Bradley Robert Hude. She dated no other men nor engaged in any other act of sexual intercourse during the possible period of conception. Her doctor told her that the baby, who weighed 7 pounds 8 ounces, was nine days overdue. She had a period in the first week of September, 1972, no period in October, and spotty to regular periods from November, 1972 to April, 1973. A girlfriend of plaintiff confirmed that she and plaintiff went with defendant and another man to the fairgrounds on August 18, 1972.

The trial court, after calculating that plaintiff's proofs showed there were 306 days between the conception and birth of plaintiff's child, directed a verdict for defendant. The court read *People v Case,* 171 Mich 282; 137 NW 55 (1912), as establishing as a matter of law the impossibility of a pregnancy longer than 300 days.

*Case* did not hold that the medically recognized possibility of a pregnancy longer than 300 days was a legal impossibility. In *Case,* the question was whether defendant had fathered a child by adulterous connection. The mother testified that she

---

* Circuit judge, sitting on the Court of Appeals by assignment.

had intercourse with defendant, her employer, while her husband was serving a term in the county jail. The strong presumption of legitimacy was not overcome by the wife's testimony of intercourse with defendant. The Court observed:

"It was shown by medical experts that the maximum period of gestation is 300 days, and the minimum 240 days, and the average 273 days. If the husband was released from jail on October 15th, he had his liberty 253 days before the birth of the child. Counting the minimum period of gestation as 240 days, it would leave 13 days in which, according to the laws of nature, he could have been the father of the child." 171 Mich at 283–284.

The *Case* opinion looked to then available medical knowledge in order to find a child legitimate; it should not be misused to establish legal rules about the possible length of pregnancy.

In *Magarell v Magarell,* 327 Mich 372; 41 NW2d 898 (1950), the Supreme Court turned to the medical evidence considered in *Case* to support its decision that defendant husband was not required to provide support for a child of his divorced wife. Overwhelming evidence was presented that plaintiff wife had carried on an illicit relationship while her husband was serving overseas in the armed forces. It is not surprising that the Court, faced with the strong evidence that the wife had extramarital relations, refused to recognize an unusually long gestation period that would have been necessary to find the child legitimate. For comparable cases from other jurisdictions, see *Kuhns v Olson,* 258 Iowa 1274; 141 NW2d 925 (1966), *Commonwealth v Cicerchia,* 177 Pa Super 170; 110 A2d 776 (1955), *Gibson v Gibson,* 207 Va 821; 153 SE2d 189 (1967), *Boudinier v Boudinier,* 240 Mo App

278; 203 SW2d 89 (1947). Other cases, in which there was no evidence of illicit relations by the wife, have held children legitimate even though this entailed recognition of an extremely long period of gestation. *e.g. George v George,* 247 Ark 17; 444 SW2d 62 (1969), *Ousley v Ousley,* 261 SW2d 817 (Ky App, 1953), *Pierson v Pierson,* 124 Wash 319; 214 P 159 (1923).

Plaintiff's testimony here, that she had intercourse with defendant over 10 months prior to giving birth, does not make it medically impossible for defendant to be the father of the child. See *E- F- v G-H-,* 154 Ind App 629; 290 NE2d 795 (1972). The jury, assisted by expert testimony and their own knowledge and experience, *Hinterman v Stine,* 55 Mich App 282; 222 NW2d 213 (1974), must make the decision on paternity. *People v Hansen,* 183 Mich 565; 150 NW 159 (1914). The trial court, in directing a verdict on the basis of medical evidence presented in a sixty-year-old case, was in error.

Reversed and remanded.